RICHARD WANLAND *et al.*, Plaintiffs-Appellants, v. JAMES BEAVERS *et al.*, Defendants-Appellees.

First District (1st Division) No. 83—2599

Opinion filed February 4, 1985.

James R. Stuber, of Park Ridge, for appellants.

George E. Downs, of Palatine, for appellees.

732

JUSTICE BUCKLEY delivered the opinion of the court:

The present appeal arises out of an action brought by Richard and Theodor Wanland to recover rent under the terms of a residential apartment lease. Plaintiffs alleged that defendants James and Velma Beavers had leased the premises from them but were later forced to vacate the apartment after extensive flooding occurred on December 3, 1982. Plaintiffs further alleged that, pursuant to the terms of the lease, they repaired the apartment within seven days of the flooding, but defendants refused to reenter the premises or pay any further rent. Defendants denied that the premises were habitable and counterclaimed for damage to various items of personal property sustained as a result of the flooding. Defendants alleged that the sewer system in the apartment complex was in disrepair and inadequate, that plaintiffs were aware of a chronic flooding problem since flooding had occurred frequently in the past, and that plaintiffs allowed the sewer system to remain in disrepair after they were advised by the city of Elgin that the sewer system was inadequate and after the city had ordered them to repair it. Following a bench trial, judgment was entered in favor of defendants for $1,910 in damages plus costs. On appeal, plaintiffs contend: (1) that the judgment was against the manifest weight of the evidence; (2) that the trial court admitted improper evidence; and (3) that defendants were allowed to plead ordinance violations in an improper manner. We affirm.

Under the common law, a landlord is not liable for injury to the property of a tenant caused by defects in the demised premises absent an express warranty as to the condition of the premises or a covenant to repair. (See generally 52 C.J.S. *Landlord & Tenant* sec. 423(3)(a) (1968).) There is a well-recognized exception to this general rule in the case of latent defects which exist at the time of leasing. Where the landlord knows or should know of such a defect and where the defect could not have been discovered upon a reasonable examination of the premises by the tenant, the landlord will be held liable for damage to the property of the tenant occasioned by the latent defect. *Hoffman v. King Resources Co.* (1974), 33 Colo. App. 310, 520 P.2d 1052; *cf. Thorson v. Aronson* (1970), 122 Ill. App. 2d 156, 258 N.E.2d 33 (recognizing the latent defect exception in those cases resulting in personal injury to tenant); see generally 52 C.J.S. *Landlord & Tenant* sec. 423(3)(b) (1968); 49 Am. Jur. 2d *Landlord & Tenant* sec. 788 (1970).

■ Thus, the doctrine of *caveat emptor* is generally applicable to lease agreements, and it is the duty of the tenant to make an examination of the demised premises to determine their safety and suitability. However, the law imposes a duty on the landlord to disclose any

latent defects in the premises where the defect is likely to cause injury to the person or property of the tenant and where the defect is not readily discoverable by the tenant. Failure to do so may constitute fraud or negligence resulting in landlord liability for injuries caused by concealment of the latent condition.

■■ Applying these principles to the case at bar, we must reject plaintiffs' contention that the judgment appealed from is contrary to the manifest weight of the evidence. The result urged by plaintiffs would only be proper where conclusions opposite to those reached by the trial court are clearly evident. (*Emmenegger Construction Co. v. King* (1982), 103 Ill. App. 3d 423, 427, 431 N.E.2d 738.) Here, we do not find this to be the case.

Under the terms of the lease, plaintiffs had the option of repairing the leased premises within 60 days or of terminating the lease. The record reveals that while the flooding occurred on December 3, 1982, plaintiffs had failed to effect repairs necessary for human habitation as late as April 1983. Photographs of the leased premises taken by Velma Beavers sometime in April reveal that the apartment was incredibly filthy, with debris and mud covering most of the basement floor. There were mold, mildew and grime on various areas of the walls, floors, and carpets. The furnace was still partially disassembled and exposed wiring dangled from the unit. Exposed wiring could also be seen on a bathroom light fixture. Mrs. Beavers further testified that the apartment still reeked of must and moisture.

Mrs. Beavers' testimony was corroborated by Mike Miliken, a building inspector for the city of Elgin. He testified that sometime in April he had accompanied Mrs. Beavers as she inspected the condition of the former apartment. He stated that at that time the furnace was in a state of disrepair, there was debris of every sort on the floor, there seemed to be a burnt out washer and dryer in the basement, and the premises were generally unkempt. Miliken further testified that he found numerous building code violations in the common areas of the building.

The record is also replete with evidence that plaintiffs' building complex had a chronic flooding problem and that plaintiffs were aware of this condition. Both plaintiffs admitted on cross-examination that the apartment complex was located on a flood plain and that various parts of the complex had been flooded in the past. Richard Wanland acknowledged that the city of Elgin had a suit pending against him concerning the apartment complex but added he was working with the city to rehabilitate the apartments. Miliken testified that the apartment complex had flooded three or four times over the

past two years. He further testified that three or four years ago the city of Elgin had instituted condemnation proceedings against the apartment complex because the recurrent flooding and inadequate drainage system represented a continuing problem for the city. Finally, Miliken stated that the city and the owners were working together to correct the problem and they eventually hoped to build a retaining wall to keep the water out of the apartment complex.

In view of the foregoing, we believe the trial court properly resolved the habitability issue; plaintiffs failed to demonstrate that the premises were sufficiently repaired for resumed occupancy by defendants. Accordingly, the lease terminated under its own terms and defendants were no longer obligated to pay rent.

Similarly, the record adequately supports the trial court's judgment in favor of defendants for property damage sustained during the flood. Defendants clearly demonstrated the leased premises contained a latent defect—inadequate drainage with a resulting proclivity toward flooding. The flooding of December 3 was not an isolated occurrence attributable to unusually bad weather. Rather, this flood was symptomatic of a longstanding drainage problem, a problem so severe the city of Elgin felt compelled to initiate condemnation proceedings against the apartment complex. Plaintiffs were clearly aware of the nature and extent of this defect when they leased the premises, yet they failed to inform defendants of the flooding problems. Also, this condition is not one readily discoverable by a tenant during a reasonable inspection of the premises. Accordingly, the trial court properly found plaintiffs liable for the property damage sustained by defendants as a result of the latent defect in the leased premises.

■ Plaintiffs also contend that the trial court erred in making certain evidentiary rulings. If a party wishes to call in question the admissibility of testimony, it is his duty to object in apt time to obtain a ruling by the trial court. (*Goldberg v. Capital Freight Lines* (1943), 382 Ill. 283, 47 N.E.2d 67.) Failure to object must be considered as a waiver of the objection. (*McElroy v. Force* (1967), 38 Ill. 2d 528, 232 N.E.2d 708.) Accordingly, plaintiffs must demonstrate both timely objection and an improper ruling by the trial court in order to prevail.

In the instant case, no trial transcript was provided by plaintiffs, only an agreed statement of facts and two affidavits. After reviewing this record, we find no indication that plaintiffs made a timely objection with regard to any of the matters presently complained of. Plaintiffs bore the burden of presenting a sufficiently complete record of proceedings at trial to support a claim of error and, in the absence of such a record, we must presume the trial court's action was in con-

formity with the law. (*Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 459 N.E.2d 958.) Accordingly, we reject plaintiffs' second contention.

■■ Finally, plaintiffs contend that defendants failed to plead ordinance violations in a proper manner. (See 87 Ill. 2d R. 133(a).) Plaintiffs argue that defendants' counterclaim was based on a breach of a statutory duty and the ordinances of the city of Elgin relied on by defendants were never set forth in the pleadings. We disagree.

After reviewing the pleadings, we find defendants' counterclaim was based on plaintiffs' breach of the common law duty to inform defendants of latent defects in the demised premises, not a breach of a statutory duty. While evidence of building code violations was elicited at trial, this evidence went to the issue of premises habitability and plaintiffs' knowledge that the apartment complex was subject to frequent flooding. Accordingly, defendants were not required to set forth each building code violation in their pleadings, since these violations were merely evidentiary facts. *County of Cook v. Illinois Wine & Spirits Co.* (1981), 93 Ill. App. 3d 710, 417 N.E.2d 812.

In view of the foregoing, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McGLOON and CAMPBELL, JJ., concur.