CHARLES E. TOKAR, Plaintiff-Appellant, v. CRESTWOOD IMPORTS, INC., et al., Defendants-Appellees.

First District (3rd Division)   No. 88—1096

Opinion filed December 14, 1988.

Arnold & Kadjan, of Chicago (Hugh B. Arnold and L. Steven Platt, of counsel), for appellant.

Daley & George, of Chicago (John J. George and Dennis J. Aukstik, of counsel), for appellees.

JUSTICE FREEMAN delivered the opinion of the court:

On April 15, 1985, plaintiff, Charles E. Tokar, filed suit against defendants, Crestwood Imports, Inc. (Crestwood), and Subaru of America, Inc. (Subaru), for breach of express and implied warranties on a Subaru vehicle under the Magnuson-Moss Warranty Act (15 U.S.C. §2301 *et seq.* (1976)) and the Uniform Commercial Code (the Code) (Ill. Rev. Stat. 1985, ch. 26, par. 1—101 *et seq.*). At the close of plaintiff's case in chief, the trial court granted Subaru's motion for a directed verdict. Thereafter, the jury returned a verdict for Crestwood. Plaintiff appeals the directed verdict for Subaru and the judgment on the verdict for Crestwood.

Plaintiff's third amended complaint, on which this cause went to trial, alleged plaintiff's purchase of a 1982 Subaru GL station wagon from defendants on June 1, 1982. The express warranty from Subaru which accompanied the vehicle covered the repair or replacement of "defects in material or workmanship *** for a period of twelve (12) months" after its delivery to the first retail purchaser. Subaru limited

"[a]ny implied warranty of merchantability or fitness for a particular purpose applicable to the car" to the 12-month period of the express warranty. Plaintiff alleged that the auto had the following defects which were discovered within the warranty period: defective driver side door; defective gear shaft; defective rear quarter panel; defective cruise control; defective actuator; defective heater fan; oil leaks; grinding during acceleration; engine surge; defective oil pump; and a defective radiator.

Plaintiff filed a motion *in limine* to bar the testimony of John Byrne as an expert witness for Subaru. Subaru identified Byrne as such on October 14, 1987, just two weeks before the trial began on October 27, 1987. The trial court denied the motion in view of defendants' difficulties in scheduling an inspection of plaintiff's auto and plaintiff's deposition.

Subaru also filed two motions *in limine*. Paragraph four of the first motion sought to exclude any evidence relating to damages other than the cost of repairing the alleged defects which occurred within the first year of plaintiff's ownership of the auto. Paragraph five of the same motion sought to exclude all references to engine damage or · repairs. The second motion sought to exclude all evidence of defects in plaintiff's auto occurring after 12,000 miles on the ground that Subaru's warranties were limited to that mileage.[1] The trial court granted paragraph four of Subaru's first motion *in limine* and granted the second motion. The court reserved ruling on paragraph five of Subaru's first motion until the next day. This ruling was based on the fact that Byrne was to inspect plaintiff's auto on the evening of the first day of trial. The record does not reflect that the court ever ruled on paragraph five of Subaru's first motion.

▄ Before proceeding to the specifics of plaintiff's appeal, we affirm the directed verdict for Subaru on count II of the third amended complaint, alleging a breach of Subaru's implied warranty of merchantability under section 2—314 of the Code (Ill. Rev. Stat. 1985, ch. 26, par. 2—314). We base that affirmance on the lack of contractual privity between plaintiff and Subaru. (*Rothe v. Maloney Cadillac, Inc.* (1988), 119 Ill. 2d 288, 518 N.E.2d 1028; *Szajna v. General Motors Corp.* (1986), 115 Ill. 2d 294, 503 N.E.2d 760.) While Subaru does not rely upon the lack of privity, we may sustain the trial court's decision

---

[1]Subaru's express and implied warranties were limited to the first 12 months of ownership with no mileage limit. The occurrence of defects after 12,000 miles was therefore irrelevant. However, plaintiff has waived any error in this regard by failing to raise it on appeal.

on any ground called for by the record, whether or not the trial court made its decision on the proper ground. (*Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 502, 520 N.E.2d 37.) Our discussion of plaintiff's claim against Subaru for breach of implied warranty will thus be limited to the claim brought under the Magnuson-Moss Warranty Act. *Rothe*, 119 Ill. 2d 188, 518 N.E.2d 1028; *Szajna*, 115 Ill. 2d 294, 503 N.E.2d 760.

On appeal, plaintiff first contends the trial court should have barred the testimony of John Byrne, whom Subaru identified as its expert witness. Plaintiff raises the following grounds for such an order: (1) Subaru did not disclose Byrne's identity as an expert witness until two weeks before trial, in violation of Supreme Court Rule 220 (107 Ill. 2d R. 220; *McDonald's Corp. v. Butler Co.* (1987), 158 Ill. App. 3d 902, 910-12, 511 N.E.2d 912); (2) Byrne's testimony affected the trial result; and (3) Byrne lacked the requisite expertise to testify. *First National Bank v. Sousanes* (1981), 96 Ill. App. 3d 1047, 1054, 422 N.E.2d 188; *Community Consolidated School District v. Meneley Construction* (1980), 86 Ill. App. 3d 1101, 1104, 409 N.E.2d 66.

■ We find that plaintiff has waived any error in Byrne's testimony by calling him as a witness in his case in chief rather than waiting for Subaru or Crestwood to call Byrne in their cases and then objecting at that time to the admission of his testimony. See *Romanek-Golub & Co. v. Anvan Hotel Corp.* (1988), 168 Ill. App. 3d 1031, 1039-40, 522 N.E.2d 1341.

Plaintiff called Byrne as an adverse witness under section 2—1102 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—1102). Under section 2—1102, any party to an action, any person for whose immediate benefit an action is prosecuted or defended, or the officers, directors, managing agents, or a foreman of any party may be called and cross-examined by any adverse party. Moreover, the party calling the witness may rebut the testimony by countertestimony and may impeach the witness with prior inconsistent statements. Section 2—1102 does not allow a party to call an opponent's expert witness as an adverse witness in his case in chief unless the witness also occupies one of the roles specifically mentioned. The trial court recognized this when, after having allowed plaintiff to call Byrne as an adverse witness, it sustained Subaru's objection to a line of questioning by plaintiff on the grounds that Bryne was not one of the individuals listed in section 2—1102.

As plaintiff improperly called Byrne as an adverse witness under section 2—1102, he, *a fortiori*, must have called Byrne as his own witness. In so doing, plaintiff foreclosed his right to complain that

Byrne could not testify for defendants. A party cannot complain of evidence which he himself has introduced or brought out. (*Romanek-Golub & Co.*, 168 Ill. App. 3d at 1040.) Once plaintiff elicited testimony from Byrne as an expert in the field of automotive mechanics, Crestwood, the only defendant remaining after plaintiff's case in chief, was entitled to elicit expert testimony from Byrne in its own case in chief. (*Cf. Romanek-Golub & Co.*, 168 Ill. App. 3d at 1039-40 (once defendants elicited direct testimony regarding a letter agreement, evidence of which they had sought to bar by motion *in limine*, plaintiffs were entitled to refer to the agreement in rebuttal).) Thus, the grounds asserted by plaintiff as justifying the exclusion of Byrne's testimony are unavailing.

■ Plaintiff also contends that the trial court erred in limiting his attempt to discredit Byrne because defendants did not object when plaintiff first called Byrne as an adverse witness. Plaintiff also asserts that defendants waived any right to object by violating Rule 220, citing *McDonald's* and *First National Bank v. Sousanes* (1981), 96 Ill. App. 3d 1047, 1054, 422 N.E.2d 188. As plaintiff cites no authority for his contention that defendants waived their right to object to his attempt to discredit Byrne by not objecting when he first called him as an adverse witness, we must reject that argument as waived on appeal. (107 Ill. 2d R. 341(e)(7); *Pauly v. Werries* (1984), 122 Ill. App. 3d 263, 265, 461 N.E.2d 54.) Moreover, *McDonald's* and *Sousanes* do not support the contention that defendants' violation of Rule 220 precluded them from objecting to plaintiff's examination of Byrne as an adverse witness.

■ We cannot otherwise agree with plaintiff that the trial court improperly limited his attempt to discredit Byrne. At the point in plaintiff's examination of Byrne at which Subaru objected, plaintiff was inquiring of Byrne as to whether he had inspected four 1,800-cc. overhead valve engines used in 1982 Subaru vehicles, including plaintiff's auto. Subaru's objection to this line of questioning on relevance grounds ultimately resulted in the trial court's belated realization that Byrne was not a proper section 2—1102 witness. Based on that realization, the trial court curtailed plaintiff's *cross-examination* of Byrne with regard to his expertise until such time as defendants offered him as an expert witness. This ruling was not erroneous.

■ The colloquy between the court and Subaru's counsel at the hearing on the motions *in limine* reveals Subaru's concern that the engine of plaintiff's auto was no longer available for inspection, the auto having been involved in an accident in July 1987. Based on this concern, the trial court reserved a ruling, until after Byrne inspected

the auto, on Subaru's motion to bar evidence of engine defects in the auto. Byrne's inspection was scheduled for the evening of the first day of trial. Thus, the trial court did not abuse its discretion in limiting plaintiff's attempt to discredit Byrne in view of: (1) the possibility that the trial court would bar evidence of defects in the engine of plaintiff's auto if it was not available for inspection by defendants; and (2) the trial court's ruling that it would allow plaintiff to cross-examine Byrne regarding his expertise in Subaru engines if defendants offered him as an expert witness on that subject.

Plaintiff next contends the trial court should have excluded or suppressed photographs of the sunroof of his auto installed by Crestwood which Byrne took during his inspection of the vehicle. Plaintiff raises several grounds for their exclusion or suppression, none of which have merit.

■ Contrary to plaintiff's assertion, the photographs were not excludable under Supreme Court Rule 220(d), providing, *inter alia*, that an expert witness' direct testimony may not go beyond the fair scope of the facts known or opinions held by him as disclosed during discovery. (107 Ill. 2d R. 220(d).) That Byrne had not revealed his intention to take the photographs at his deposition is immaterial. Plaintiff did not allege a defect in the sunroof until he testified at trial. Therefore, Crestwood had no reason to photograph the sunroof before then. In view of the fact that the photographs were not taken until after the trial started, that defendants had not produced them during discovery is also immaterial, if not an altogether illogical ground for their exclusion.

■ Nor were the photographs excludable under Rule 220(d) on the ground that Bryne, who was improperly allowed to testify as an expert, provided their foundation. Expert testimony is not required to establish the foundation for photographic evidence. All that is needed is the testimony of any person with personal knowledge of the photographed object, at a time relevant to the issues, that the photograph is a fair and accurate representation at that time. (E. Cleary & M. Graham, Handbook of Illinois Evidence §401.8, at 125 (4th ed. 1984).) As Byrne satisfied those requirements without regard to his status as an expert witness for Crestwood, the admission of the photographs into evidence did not constitute error.

■ Moreover, because plaintiff did not allege a defect in the sunroof until the trial started, the photographs should not have been suppressed under Supreme Court Rule 219(d) as an abuse of discovery. (107 Ill. 2d R. 219(d).) Although he apparently consented to Byrne's inspection of the auto, plaintiff argues that he did not consent to

Byrne photographing the auto or know that he would do so. However, in view of the short notice given Crestwood of plaintiff's claim of a defective sunroof, we believe Crestwood was entitled to photograph the sunroof to defend against that claim.

■ Finally, we disagree with plaintiff that the photographs should have been suppressed as misleading because they were "full of glare" and could only have shown severe water leakage. The photographs of the sunroof of plaintiff's auto are not so imperfect, because of lighting glare or otherwise, that they could have misled the jury as to whether the roof leaked to the extent to which plaintiff testified. Specifically, the photographs clearly show that, contrary to plaintiff's testimony, the ceiling of plaintiff's auto was not discolored as a result of a leak in the sunroof. In this regard, we reject plaintiff's suggestion that the photographs only reflected the appearance of his auto four years after he first complained of the sunroof to Crestwood. At trial, the following colloquy occurred between Crestwood's counsel and plaintiff:

"Q. Now that ceiling does not have any water discoloration around it; right?

A. I believe it does, right around the sunroof."

Q. It's your testimony that it does have that?

A. I believe it does."

Thus, plaintiff testified that the roof of his auto was *presently* discolored due to the sunroof leak. The photographs taken by Byrne were properly admissible to rebut that assertion.

■ Plaintiff next contends the trial court erred in excluding, pursuant to Subaru's motion *in limine,* any evidence of latent defects existing in plaintiff's vehicle during the one-year period of Subaru's warranties, but not manifesting themselves until after its expiration. Specifically, plaintiff contends the trial court erred in relying upon *Nelligan v. Tom Chaney Motors, Inc.* (1985), 133 Ill. App. 3d 798, 479 N.E.2d 439. He assets that *Nelligan* involved an issue not present here, *viz.,* which limitations period under the Code applies to a cause of action for breach of implied warranty.

We agree with plaintiff that *Nelligan* is inapposite to this case. *Nelligan* dealt, *inter alia,* with whether an implied warranty of merchantability "explicitly" extended to the future performance of a covered auto for purposes of applying the discovery rule exception to the four-year limitations period for breach of contract claims under the Uniform Commercial Code (Ill. Rev. Stat. 1983, ch. 26, par. 2—725(2)). Following two Federal district court cases, the court held that the exception to the four-year limitations period does not apply to breach of implied warranty claims. (*Nelligan,* 133 Ill. App. 3d at 801-02.) The

issue involved in *Neligan* is different from the issue here. It is one thing to determine whether an implied warranty extends to future performance and thus whether a claim for its breach may be brought beyond the ordinary limitations period; it is quite another to determine whether an express warranty covers defects which are latent during the warranty period and whether a claim for its breach may be brought within the four-year Uniform Commercial Code limitations period but beyond the period of the warranty.

The inapplicability of *Nelligan* to this case is ultimately unavailing to plaintiff for we find ample other authority supporting the exclusion of evidence relating to defects which manifested themselves after Subaru's warranty expired.

In *Norman v. Ford Motor Co.* (1987), 160 Ill. App. 3d 1037, 1041, 513 N.E.2d 1053, the plaintiffs asserted claims for negligent design and manufacture, breach of implied warranties and strict products liability based on an alleged "smoldering" of the rear seat of their Ford auto. This court did not indicate when, according to plaintiffs, the defect alleged first existed for purposes of the breach of warranty claim. However, it is reasonable to infer, given the claims of negligent design and manufacture and strict products liability, that the defect existed not later than the period covered by the defendant's express and implied warranties, *i.e.*, the first 12 months or 12,000 miles, whichever occurred earlier. That inference notwithstanding, this court held that the fact that the car was 1½ years old and had been driven 17,729 miles when the smoldering occurred precluded the plaintiffs from asserting a cause of action for breach of warranty. *Norman*, 160 Ill. App. 3d at 1041. See also *Alfred N. Koplin & Co. v. Chrysler Corp.* (1977), 49 Ill. App. 3d 194, 196-97, 364 N.E.2d 100.

While *Norman* and *Koplin* support, as an inference therefrom, the conclusion that plaintiff could not recover for allegedly latent defects in his auto which manifested themselves after Subaru's warranty period, other cases directly support that conclusion. In *Walsh v. Ford Motor Co.* (D.D.C. 1984), 588 F. Supp. 1513, certain class action plaintiffs argued that the defendant's express warranty to repair, replace or adjust free any parts found to be defective within the earlier of 12 months or 12,000 miles covered latent defects which did not manifest themselves until after the warranty expired. In rejecting this argument, the court stated:

> "[T]o hold that all latent defects are covered under the written warranty, whether they become apparent to the customer before or after the expiration of the written warranty, would place an undue burden on the manufacturer. Ford, would in ef-

fect, be obliged to insure that a vehicle it manufactures is defect free for its entire life. The Court cannot accept such a drastic interpretation of the plain language of the warranty. Therefore *** plaintiffs who fail to allege *** malfunctions within the warranty period may not assert *** warranty claims." (*Walsh*, 588 F. Supp. at 1536.)

(See also *Taterka v. Ford Motor Co.* (1978), 86 Wis. 2d 140, 271 N.W.2d 653; *Broe v. Oneonta Sales Co.* (1978), 100 Misc. 2d 1099, 420 N.Y.S.2d 436; *Moulton v. Ford Motor Co.* (Tenn. App. 1973), 13 U.C.C. Rep. Serv. (Callaghan) 55, *aff'd* (Tenn. 1974), 511 S.W.2d 690, *cert. denied* (1974), 419 U.S. 870, 42 L. Ed. 2d 109, 95 S. Ct. 129.) Under these cases, plaintiff cannot base an action for breach of express and implied warranties limited to one year after purchase on defects manifesting themselves after that period.

The cases plaintiff cites for a contrary conclusion deal with section 2—725 and are thus as inapposite here as *Nelligan*. Moreover, plaintiff mischaracterizes the holdings in those cases. *Klondike Helicopters, Ltd. v. Fairchild Hiller Corp.* (N.D. Ill. 1971), 334 F. Supp. 890, like *Nelligan*, did not hold that a buyer could sue under an implied warranty for defects manifesting themselves after the expiration of the express warranty period. Rather, it held that express and implied warranties on a helicopter extended to its future performance because it was reasonable to expect that such warranties extend for the life of the helicopter. In holding that the claim under the warranties was not barred by the four-year limitations period, the court did not indicate whether, as here, those warranties were limited in duration. Contrary to plaintiff's assertion, neither *Bobo v. Page Engineering Co.* (W.D. Pa. 1967), 285 F. Supp. 664, *aff'd* (3d Cir. 1968), 395 F.2d 991, nor *Hempfield Area Joint School Building Authority v. Tectum Corp.* (Pa. 1964), 2 U.C.C. Rep. Serv. (Callaghan) 518, concurred with *Klondike*. *Bobo*, like *Nelligan*, held to the opposite of *Klondike*. *Hempfield* merely held that the plaintiff should have the opportunity to prove that certain warranties of an unspecified type or duration extended to the future performance of roof decking material.

Also unavailing to plaintiff is the argument that the Code's application of the discovery rule to revocations of acceptance and actions for breach of warranty, brought thereafter, supports his right to pursue this action. Section 2—608 allows a buyer to revoke his acceptance of goods within a reasonable time after he discovers or should have discovered a ground therefor. (Ill. Rev. Stat. 1985, ch. 26, par. 2—608(2).) Section 2—607(3)(a) requires notice of a breach to the seller within such time as well before bringing an action therefor. (Ill.

Rev. Stat. 1985, ch. 26, par. 2—607(3)(a).) However, in *Moulton v. Ford Motor Co.* (Tenn. App. 1973), 13 U.C.C. Rep. Serv. (Callaghan) 55, the court stated:

"[Section 2—607(3)(a)] provides for the time within which a claim must be asserted. It states that where goods have been accepted, 'the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach or be barred from any remedy.' [Section 1—204(1) of the Code] provides that whenever any provision [of the Code] requires an action to be taken within a reasonable time, 'any time which is not manifestly unreasonable may be fixed by agreement.'

Limitation of the period of the express warranty is in effect a limitation of the time within which a claim must be asserted under that warranty. The warranty actually provides for repair or replacement of \*\*\* parts 'found to be defective' within the limited period, and if such discovery were made presumably a further reasonable period of time would be allowed for giving notice. Here, however, no such discovery within the limited period was made. Thus, plaintiff has no valid claim of breach of express or implied warranty." *Moulton*, 13 U.C.C. Rep. Serv. at 59.

See also *Taterka v. Ford Motor Co.* (1978), 86 Wis. 2d 140, 150, 271 N.W.2d 653, 657.

Under *Moulton*, we conclude that, by limiting the duration of its warranties, Subaru, in effect, limited the time within which a claim could be asserted thereunder *or* an acceptance of the covered vehicle revoked for Subaru's breach of those warranties. Similarly to the warranty in *Moulton*, Subaru's express warranty provided for repair or replacement of defective parts within a limited period. Unlike the *Moulton* warranty, however, Subaru's warranty explicitly provided that warranty claims "must be made as soon as reasonably possible" after a defect was discovered. Thus, unless plaintiff discovered any engine defects within the period of the warranty, he had no valid claim for breach of an express or implied warranty against Subaru.

■■■ At oral argument before this court, plaintiff contended that the trial court's exclusion of evidence of repairs to or defects in his auto after the period of Subaru's warranties from his case against Crestwood, pursuant to Subaru's motions *in limine*, constituted "plain error." Plaintiff advances the "plain error" argument in view of his failure to raise the issue in the trial court and in his appellate brief. Notwithstanding plaintiff's allegation of plain error, we find

that plaintiff waived any error in this regard.

We so conclude because plaintiff did not: (a) object, when the trial court granted Subaru's motions *in limine*, that they barred the use of the subject evidence only against Subaru, not Crestwood; or (b) object when the trial court, in effect, granted Crestwood's motion for directed verdict on the basis of the lack of evidence resulting from the grant of Subaru's motion *in limine*.

When the trial court excluded all evidence of damages incurred and defects in plaintiff's auto occurring after the warranty period pursuant to Subaru's motions *in limine*, plaintiff did not object or assert that the trial court's ruling barred such evidence only against Subaru, not Crestwood. Rather, plaintiff, along with the court and defendants, seemed to assume that the trial court's ruling barred the evidence which was the subject of Subaru's motions against Crestwood as well.

We agree with plaintiff that the court erred by implicitly extending Subaru's motions *in limine* to Crestwood. We base that conclusion on Crestwood's failure, recognized by the trial court, to exclude or modify the implied warranty or merchantability to which its sale of the auto to plaintiff was subject under the Code. (Ill. Rev. Stat. 1985, ch. 26, pars. 2—314, 2—316; Comment, *Illinois Lemon Car Buyer's Options in a Breach of Warranty Action*, 1987 J. Marshall L. Rev. 483.) Unlike Subaru, Crestwood did not modify, *e.g.*, limit the duration of, or exclude, that warranty. Therefore, the fact that plaintiff incurred damages or that defects in the auto occurred after the period of Subaru's warranty was not a proper ground upon which to exclude such evidence from plaintiff's case against Crestwood for breach of its implied warranty.

■■■ However, plaintiff cannot now complain of any error in this regard. A party cannot sit idly by while the trial court undertakes a course of action and then allege error in that regard. (See *Biggerstaff v. New York, Chicago & St. Louis R. Co.* (1957), 13 Ill. App. 2d 85, 91, 141 N.E.2d 72 (submission of jury interrogatories); *Onderisin v. Elgin, Joliet & Eastern Ry. Co.* (1959), 20 Ill. App. 2d 73, 78, 155 N.E.2d 338 (submission of jury instructions); *Grunsten v. Malone* (1984), 125 Ill. App. 3d 1068, 1075-76, 466 N.E.2d 1209 (same).) In *Star v. Moy Tong Hoy* (1913), 177 Ill. App. 267, the court stated:

> "A litigant may not sit idly by and speculate on what the ruling of the court may be in a pending matter and afterwards be heard to insist that such order be set aside for reasons known to him at the time the order *** was entered, but which he negligently failed then to bring to the attention of the court.

We know of no exception to this rule." (*Staar*, 177 Ill. App. at 269.)

(Accord: *Year Investments, Inc. v. Joyce* (1965), 62 Ill. App. 2d 173, 180, 210 N.E.2d 66.) By failing to object on the grounds that the subject evidence was still admissible against Crestwood, plaintiff waived the error. Moreover, that plaintiff may have alleged error in this regard in his post-trial motion is unavailing. The aforestated rule precludes an ineffective allegation of error for the first time in a post-trial motion and, thus, on appeal. *Onderisin*, 20 Ill. App. 2d 73, 155 N.E.2d 338; *Grunstein*, 125 Ill. App. 3d 1068, 466 N.E.2d 1209.

The same conclusions apply to plaintiff's failure to object when the trial court, in effect, granted Crestwood's motion for directed verdict as to all defects alleged by plaintiff save the defective sunroof. In so ruling, the trial court implicitly applied to Crestwood the finding of no evidence of defects on which it based its grant of Subaru's motion for a directed verdict. This was error requiring an objection by plaintiff because that finding was based on the exclusion of such defects pursuant to Subaru's motion *in limine*. However, plaintiff did not object on that basis at that time. Under the foregoing rule and case law, he has also waived any error in this aspect of the case.

The underlying reason for the foregoing principles is the active role a party takes in the action complained of, albeit by remaining silent when it is incumbent upon him to object. In view of that rationale, we decline to recognize either the extension of Subaru's motions *in limine* to plaintiff's case against Crestwood or the grant of Crestwood's motion for directed verdict on the basis, at bottom, of those motions as plain error.

Plaintiff next contends that, in view of his testimony of other defects in his vehicle's engine during the one-year warranty period, the trial court erred in granting Subaru's motion for directed verdict. Plaintiff testified at trial that he complained to Crestwood within the warranty period about grinding noises in the transmission, heater problems, and cruise control problems. Plaintiff concedes that he later equivocated as to when the heater problems occurred and that he was not certain whether he notified Crestwood within the first year concerning the cruise control problems. He nevertheless concludes that his testimony, coupled with that of his expert witness that the most logical cause of the grinding noises in the transmission was a problem with the synchronizers, precluded a grant of the directed verdict for Subaru under the standard therefor. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

Regarding the grinding noise or defect in the transmission, plain-

tiff's expert also testified that he examined the disassembled engine of plaintiff's auto and repair orders pertaining to it. He did not examine the transmission. He also testified that the proper method oi determining whether there was a problem with the synchronizers was to reproduce the noise. Plaintiff testified, *inter alia*, that within the first three to six months he owned the auto, he took the car back to Crestwood to be inspected for that noise. The service manager told plaintiff that the noise was the engaging of the four-wheel drive function. Plaintiff took the auto back to Crestwood again for this noise but could not recall when. On cross-examination, plaintiff admitted that he could not recall whether he had taken the auto back within the first year for the grinding noise. On redirect examination, plaintiff stated that the transmission was not repaired to his satisfaction within the first year.

■■ In ruling on Subaru's motion for directed verdict, the trial court concluded, with respect to the alleged defect or grinding noise in the transmission, that plaintiff's testimony did not establish a *prima facie* case of breach of warranty. We agree. The evidence that plaintiff heard a grinding noise in the transmission and brought this noise to Crestwood's attention during the warranty period, even when coupled with his expert's testimony, was insufficient to create a *prima facie* case of a breach of an express warranty to repair or replace defective parts or an implied warranty of merchantability. In other words, plaintiff's evidence, including the testimony of his expert witness, failed to establish that the cause of the grinding noise was a defect in his auto which Subaru failed to remedy or which rendered the car unfit for the ordinary purpose for which autos are used. As such, we cannot but conclude that a directed verdict for Subaru was in order on this issue.

In view of the fact that plaintiff was not certain when the heater problems occurred or whether he notified Crestwood within the first year concerning the cruise control problems, we believe the directed verdict for Subaru on these issues was correct.

Plaintiff lastly contends that the trial court erred in allowing defendants to imply that he misused the vehicle and was lying about the alleged transmission defect and, further, in then prohibiting him from rebutting those implications. On cross-examination, plaintiff admitted that he never had the transmission noise repaired. After a sidebar conference immediately following his admission, plaintiff was permitted to testify on redirect examination that the transmission was not repaired to his satisfaction within the first year. Plaintiff asserts that he should have been allowed to testify about other engine

repair expenses and unsatisfactory repairs beyond the one-year warranty period to rebut defendants' implications.

When plaintiff was asked the question complained of, his counsel merely requested to be heard by the court. When the court indicated it would hear him after plaintiff answered the question, counsel voiced no objection. As such, plaintiff waived any error in the question for purposes of appeal. (*Wanland v. Beavers* (1985), 130 Ill. App. 3d 731, 734, 474 N.E.2d 1327.) Even assuming the converse, the question was not improper inasmuch as Subaru's motion *in limine* sought to exclude evidence of repairs, not evidence of nonrepairs, after the warranty period. Moreover, the fact that plaintiff never had the alleged transmission noise repaired was properly admissible to rebut the inference that it was caused by a defect in the transmission.

Nor do we find error in the trial court's limitation of plaintiff's response to the question complained of on redirect examination. At trial, his counsel merely stated that plaintiff should be allowed to explain that he did not repair the transmission because, when "they talked about repairing the noise in the transmission," *i.e.*, July 1984, plaintiff had spent $1,600 or $1,800 to repair oil leaks and to replace the engine block. However, absent a contention in the trial court and here that plaintiff could simply not afford to repair the transmission because of the expense of those repairs, they were irrelevant as a reason for the nonrepair of the transmission.

For all the foregoing reasons the directed verdict for Subaru is affirmed and the judgment entered on the verdict for Crestwood is affirmed.

Affirmed.

WHITE, P.J., and McNAMARA, J., concur.