Dennis SAMPLER, Jr., on behalf of
himself and all others similarly
situated, Plaintiffs,

v.

CITY CHEVROLET BUICK GEO, INC.,
Auto Capital Enterprises, Inc., and
Al Ravin, Defendants.

No. 96 C 4348.

United States District Court,
N.D. Illinois,
Eastern Division.

May 20, 1998.

Order Amending Opinion On Reconsideration
July 31, 1998.

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Louise T. Walsh, Edelman & Combs, Chicago, IL, for Plaintiff.

Patrick Charles Dowd, Patrick John Ruberry, Ryan James Harrington, Dowd & Dowd, Ltd., Chicago, IL, for Defendants City Chevrolet Buick Geo, Inc., Al Ravin.

Eugene Joseph Kelley, Jr., John L. Ropiequet, Christopher S. Naveja, George P. Apostolides, Arnstein & Lehr, Chicago, IL, for Defendant Auto Capital Enterprises, Inc.

## MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge:

Plaintiff Dennis Sampler, Jr., brought this class action against defendants City Chevrolet Buick Geo, Inc. ("City"), City finance manager Al Ravin, and Auto Capital Enterprise ("ACE") alleging that they included hidden finance charges in the price of vehicles sold on credit. Count I of the Second Amended Complaint alleges that these charges violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1638(a), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. § 226. Count II alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. Count IV alleges violations of the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/2. Counts VII and VIII allege that City sold plaintiff a defective and unmerchantable vehicle in violation of the Magnuson–Moss Consumer Product Warranty Act ("Magnuson–Moss"), 15 U.S.C. § 2301, and the Uniform Commercial Code ("UCC"), 810 ILCS 5/2–314. Count IX alleges that City breached its express limited warranty of plaintiff's vehicle. Defendants City and Ravin have filed a motion for summary judgment and, for the reasons below, their motion will be granted in part and denied in part.

### I. Factual and Procedural Background

This is one of several recent cases in this district which have invited judicial scrutiny of auto financing practices. Defendant City Chevrolet sells up to seventy percent of its used cars on credit. Although City assigns all of its credit contracts to lending institutions, it sends high risk contracts to subprime lenders which purchase the contracts at an amount below their face value. The difference between the face value of a contract and the value at which it is purchased by a subprime lender is known as a discount or holdback. City assigns up to thirty percent of its used car financing contracts to subprime lenders.

On March 16, 1996, plaintiff Dennis Sampler purchased a used automobile from City Chevrolet on credit. He signed a retail installment contract with Mercury Finance

Company stating that the price of the vehicle was $5,362 and was payable in twenty-four monthly installments of $248.18 with an annual percentage rate of 29 percent. A few days after plaintiff signed the contract, he learned that Mercury had turned down his credit application and that he needed to sign another credit agreement. On March 23, 1996, plaintiff returned to City and signed a retail installment contract with Auto Capital Enterprises ("ACE"). The ACE contract provided for a price of $5,200 with twenty-four monthly payments of $222.45 and an annual percentage rate of 34 percent. At $7,356.32, the total sale price under the ACE contract was thirty-two dollars higher than the sale price under the Mercury contract.

ACE typically purchases retail installment contracts from City at a discount of eight to twelve percent below the face value of the contract. When ACE receives a request from a dealer to bid on a retail installment contract, it returns a set of variable terms under which it is willing to purchase the contract. These variables include the term of repayment, the interest rate or "buy rate," and the amount of the discount. At its option, the dealer may fix the interest rate in the customer's retail installment contract at up to five percent above the buy rate set by ACE. ACE then returns half of the additional interest to the dealer. City recovered between $113 and $119 from splitting the difference between the buy rate and the APR on plaintiff's contract sold to ACE.

City prepares a "manager sheet" for each transaction which lists the cost of the lender discount and any warranties. The manager sheet is completed by a salesperson and manager before the deal is sent to the financing office for approval. When the deal is finalized, City prepares a recap sheet which lists the price that City paid for the car and any additional dealer costs. In a section of plaintiff's manager sheet identifying "Additional Equipment Shown on Order," a sales manager listed a holdback of $410 and a warranty of $95. The deal recap sheet listed the profit on plaintiff's vehicle as $196, a figure derived from the purchase price of $5,200 less costs of $3,755 and less an overallowance of $1,249 on plaintiff's trade-in. Although the financing discount was included in the costs of plaintiff's vehicle, it was not separately disclosed to plaintiff.

When plaintiff's car began to overheat four or five days after he signed the ACE contract, he returned it to City for repairs but was told to come back another day. Although the vehicle was still within its thirty-day or thousand-mile limited warranty when it was initially tendered for repairs, the warranty had lapsed by the following day and plaintiff was obliged to repair the overheating problem at his own expense. Since then, plaintiff's vehicle has had problems with its alternator, brake lights, headlights, starter, heating system, air conditioner, power steering, axles, and belts.

On July 17, 1996, plaintiff filed a lawsuit alleging that City routinely passes on the cost of lender discounts to its customers as a hidden finance charge. Following dismissal of the action for failure to state a claim, plaintiff filed a Second Amended Complaint on October 22, 1996. On July 8, 1997, the court certified a class of plaintiffs including all persons who signed a retail installment contract to purchase a vehicle from City, whose transaction was documented as a consumer credit transaction, and for whom the finance company did not pay City the full amount financed. On October 29, 1997, the court certified a subclass consisting of all members of the City class whose contracts were assigned in whole or in part to ACE. On April 17, 1998, the court approved a final settlement agreement as to all members of the ACE subclass, an agreement which resulted in the dismissal of Counts III and V of the Second Amended Complaint and all pending claims against defendant ACE. Defendants City and Ravin have filed a motion for summary judgment on all of the remaining claims.

## II. *Discussion*

The court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the "initial

responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The nonmoving party must then come forward with specific facts demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). The court must review the evidence and draw all permissible inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### A. *Truth in Lending Act*

Count I alleges that City imposes hidden finance charges on car buyers in violation of the Truth in Lending Act, 15 U.S.C. § 1683. The purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair billing and credit card practices." 15 U.S.C. § 1601(a). The statute therefore requires lenders to make a clear and accurate disclosure of all finance charges imposed on the consumer in credit transactions. 15 U.S.C. § 1638(a)(3). TILA defines a finance charge as the "sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit ." 15 U.S.C. § 1605(a). Federal Reserve Board Regulation Z further defines a finance charge to include "[c]harges imposed on a creditor by another person for purchasing or accepting a consumer's obligation, if the consumer is required to pay the charges in cash, as an addition to the obligation, or as deduction from the proceeds of the obligation." 12 C.F.R. § 226.4(b)(6).

The official staff commentary to Regulation Z provides that certain charges are exempt from TILA disclosure requirements even if they fall within the regulatory definition of a finance charge. It explains that "[c]harges absorbed by the creditor as a cost of doing business are not finance charges, even though the creditor may take such costs into consideration in determining the interest rate to be charged or the cash price of the property or service sold. However, if the creditor separately imposes a charge on the consumer to cover certain costs, the charge is a finance charge if it otherwise meets the definition." Official Staff Commentary to 12 C.F.R. § 226.4(b)(6) at § 226.4(a)(2) (Supp.I). By way of example, the commentary specifies that a "discount imposed on a credit obligation when it is assigned by a seller-creditor to another party is not a finance charge as long as the discount is not separately imposed on the consumer." *Id.* Under these rules, the cost of a discount is a finance charge which requires TILA disclosures only if it is separately imposed on a consumer.

Plaintiff alleges that City inflates the sticker price of vehicles likely to be sold on credit in order to cover the cost of the discounts. He also claims that City takes the discount into consideration when it negotiates with customers who indicate that they will buy on credit. Moreover, plaintiff charges that City adds the discount as a separate and identifiable cost item to the negotiated price of its vehicles sold on credit. The court must decide whether any of these allegations establish that the cost of the discounts was separately imposed on members of the plaintiff class.

The question of whether the cost of a discount has been absorbed by a dealer or separately imposed on a buyer is necessarily a matter of line-drawing, and the regulations leave considerable doubt as to where the line should be drawn. Presumably four distinct factual scenarios are possible. First, a dealer might absorb the discount in any given credit transaction by calculating the amount of its profit in that transaction and then subtracting the amount of the discount from its profit. Second, the dealer might pass on the aggregate cost of its discounts by inflating the price of all of its vehicles, including those sold for cash. Third, the dealer might pass on the aggregate cost of its discounts solely by increasing the cost of its vehicles sold on credit. Fourth, the dealer might pass on the discount in any single transaction by adding it as a separate and identifiable cost to the negotiated price of the vehicle.

The court must decide which of these scenarios is proper.

■ Plaintiff suggests that a dealer should subtract the discount from its profit in any single credit transaction.[1] Plaintiff cites a number of cases which stand for the general proposition that a creditor may not impose a hidden finance charge on a consumer by inflating the price of goods above what a consumer would have paid in a comparable cash transaction. *See, e.g., Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 366–368, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973), *In re Stewart,* 93 B.R. 878, 884–885 (Bankr.E.D.Pa.1988), *Lawson v. Reeves,* 537 So.2d 15, 17 (Ala.1988), *Rowe Auto & Trailer Sales, Inc. v. King,* 257 Ark. 484, 517 S.W.2d 946, 947 (1975). These cases cannot be taken to hold that a dealer must subtract the cost of a discount from its profits in any given credit transaction, however, because the staff commentary to Regulation Z expressly states that a dealer may take the cost of a discount into consideration when setting prices. *See Walker v. Wallace Auto Sales, Inc.,* 1997 WL 598149, at *3 (N.D.Ill.1997), *citing* 12 C.F.R. § 226.4(a)(2) (Supp.I). To the extent that a dealer may pass on the cost of a discount to a purchaser in some form, it need not subtract the full cost of the discount from its profits in any single transaction.

Defendant, by contrast, contends that a discount is a cost of doing business that may always be included in the purchase price of a vehicle. A number of courts have suggested that a discount is not a finance charge when it is included within the purchase price of a vehicle. *See Balderos v. City Chevrolet, Buick and Geo, Inc.,* 1998 WL 155912, at *1, .4 (N.D.Ill.1998) (discount is not a finance charge if it is included in the purchase price of a vehicle and is not imposed separately from the buyer's obligation to pay either the purchase price or the contractual finance charge); *Walker,* 1997 WL 598149 at *3 (dealer may inflate cash price of vehicle to cover cost of discount); *Sampson v. Mercury Finance Co.,* 95–S–418–N, slip op. at 5–6 (M.D.Ala.1996) (cost of discount is not separately imposed on consumer even when added to purchase price of vehicle); *Preston v. Mercury Finance Co.,* 94–0724–8H–C, slip op. at 6 (S.D.Ala.1996) (same). These cases might be read to establish that a dealer may impose the cost of a discount on a consumer in any manner that it sees fit because, in some sense, any cost associated with a purchase is "included" in the overall price. Such a rule would be erroneous, however, because Regulation Z clearly states that the cost of a discount may never be separately imposed on a consumer. Nor is such a rule supported by the facts of these cases, which did not involve allegations that the discounts were added as a separate and identifiable cost item to the negotiated price of the vehicles in question. In short, these cases do little to illuminate when a discount is separately imposed on a consumer.[2]

At least one court has suggested that a discount is separately imposed if it is added as a separate cost item to the negotiated price of a vehicle. In *Johnson v. Rohr–Ville Motors, Inc.,* 1996 WL 447261 (N.D.Ill.1996), the court held that a discount was separately imposed on a consumer when it was concealed in a charge for fictitious repairs. *Id.* at *4. The discount was not "included" in the price of the vehicle even though, strictly speaking, it was part of the overall purchase price. Conceivably, the court reached this conclusion because the dealer added the discount to the negotiated price of the vehicle as a separate and identifiable cost item, thereby representing to the purchaser that the price of his vehicle would have been lower but for the charge.

---

1. Plaintiff argues that "[i]f City absorbs the discount, then its profit on discounted transactions should be less than non-discounted transactions such as cash sales." Pls.' Resp. to ACE S.J. at 14.

2. The court notes that several of the cases cited by defendant are inapposite because they do not include allegations that the cost of a discount was included within the price of the goods or services at issue. *See Perino v. Mercury Finance*

Co., 912 F.Supp. 313 (N.D.Ill.1995) (no allegation that finance charge included in price of vehicle) (*see Taylor,* 1998 WL 177689, at *7 n. 8), *Balentine v. Union Mortgage Co.,* 1994 WL 34256 (N.D.Ill.1994) (no allegation that cost of discount was added to price of home improvement contracts), and *April v. Union Mortgage Co.,* 709 F.Supp. 809, 813 (N.D.Ill.1989) (discrediting allegation that cash price of home improvement contract was inflated to cover the cost of discount).

The *Johnson* rule implicitly recognizes a distinction between the practice of including the cost of a discount within the negotiated price of a vehicle and the practice of adding the discount to the negotiated price as a separate and identifiable cost item. The difference lies in the manner in which the price is negotiated. If a dealer negotiates the price of a vehicle so as to cover the discount and other costs, then the discount is included in the price. If the dealer negotiates the price of the vehicle and then informs the purchaser that he will have to pay an additional charge to cover the discount, then the discount is separately imposed. This rule is not without logical foundation, for dealers may be able to obtain a higher overall price by adding the cost of the discount as a post hoc tax on the sale instead of including it in the negotiated price. Following *Johnson*, then, the court finds that the cost of a discount is separately imposed on a purchaser if it is added as a separate and identifiable cost item to the negotiated price of a vehicle sold on credit.

Since a dealer may include the cost of a discount within the purchase price of a vehicle, the court must decide whether the dealer may impose that cost on credit transactions alone. This question was addressed in *Taylor v. Bob O'Connor Ford, Inc.*, 1998 WL 177689 (N.D.Ill.1998), where the court held that the cost of a discount must be allocated among credit and cash purchasers equally. *Id.* at *9. Criticizing both *Walker*, 1997 WL 598149 at *3, and *Cleveland v. Wallace Auto Sales*, 1998 WL 142357, at *4 (N.D.Ill.1998), cases which held that the cost of a discount may be included in the cash price of a vehicle sold on credit, the court suggested that a discount may never be included in the cash price of a vehicle because the term "cash price" is defined as "the price at which a creditor, in the ordinary course of business, offers to sell for cash the property." *Id.* at *8, *quoting* 12 C.F.R. § 226.2(a)(9). The court concluded that a dealer may seek to recoup the costs of a discount by charging all consumers a higher price, but if the higher price is charged only to consumers buying on credit, then the difference between the cash price and the higher credit price is a separately imposed finance charge. *Id.* at *9.

The regulatory definition of the term "cash price" does not, however, lead inexorably to the conclusion that a dealer must allocate the aggregate cost of its discounts to cash and credit purchasers equally. The *Taylor* court reasoned that the cost of a discount may be included in the "cash price" of a vehicle sold on credit so long as it is also included in the "cash price" of a vehicle sold for cash. This reasoning presupposes that the cash price of a vehicle sold on credit must be equal to the cash price of the same vehicle sold for cash. This presupposition is unwarranted, however, because the discount raises the cost of a credit transaction above that of a cash transaction and the commentary to Regulation Z expressly authorizes a dealer to consider the discount when setting the cash price of a vehicle. The court therefore declines to follow the *Taylor* opinion to the extent that it departs from prior caselaw holding that the cost of a discount may be included in the price of a vehicle sold on credit. It is the opinion of this court that a dealer may seek to cover the aggregate cost of its discounts solely by raising the price of its vehicles sold on credit.

Applying these rules to the instant case, it is apparent that defendant's motion for summary judgment must be denied. The recap and manager sheets which City prepared for the Sampler transaction could be read as evidence that City negotiated the price of plaintiff's vehicle and then increased that price by the amount of the discount, thereby representing that the price of plaintiff's vehicle might have been lower but for that cost. Alternatively, the evidence might be construed to show that City included the discount in the negotiated price of the vehicle and listed the additional costs on the recap sheet simply to show that they were subtracted from its overall profits. If the latter is true, then City must prevail because a dealer may include the cost of a discount within the price of a vehicle sold on credit. If the former is true, then plaintiff must prevail because the discount was separately imposed on the transaction. Because either conclusion is reasonable, defendants' motion for summary judgment on Count I must be denied.

This ruling forecloses relief to any member of the class who cannot establish that the lender discount was added as a separate and identifiable cost item to the price of his or her vehicle. While the number of class members who can make this showing might be quite small, the court may not redefine the scope of the class following this decision on the merits. Fed.R.Civ.P. 23(c)(1). All current members of the City class are thus bound by the instant disposition. *See generally Premier Electrical Construction Co. v. National Electrical Contractors Ass'n, Inc.*, 814 F.2d 358, 362 (7th Cir.1987).

### B. *RICO*

■ Count II alleges that City finance manager Al Ravin implemented a scheme to impose hidden finance charges on consumers in violation of RICO. 18 U.S.C. § 1962. It alleges that City is an enterprise within the meaning of 18 U.S.C. § 1961(4) and that Ravin engaged in a pattern of mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. In his motion for summary judgment, Ravin points out that plaintiff has not come forward with any evidence showing that he participated in the alleged conspiracy in any manner, and plaintiff does not contest this point in his response. Accordingly, defendant Al Ravin's motion for summary judgment will be granted.

### C. *Illinois Consumer Fraud Act*

■ Counts IV alleges that City violated the Illinois Consumer Fraud Act, 815 ILCS 505/2. City asserts that this claim is preempted by TILA because ICFA specifically allows transactions which are authorized by the laws of the United States. 815 ILCS 505/10b(1). *See Cleveland*, 1998 WL 142357, at *4. Because the court has determined that several of the transactions in this case may have violated TILA, City's motion for summary judgment on count IV will be denied.

### D. *Breach of Express Warranty*

■ Count IX alleges that City breached its express limited warranty by failing to provide necessary repairs for plaintiff's vehicle. At the time of purchase, plaintiff received a limited warranty whereunder the dealer agreed to share the cost of selected repairs for a period of thirty days or one thousand miles after purchase. When plaintiff's car began to overheat within a few days of the purchase, he tendered it to City for repair but was told to return in a few days. Although the vehicle was still under warranty when plaintiff presented it for repair, the warranty had expired by the following day. When City finally repaired the car, plaintiff was held solely responsible for the cost.

City has moved for summary judgment on the grounds that the limited warranty had lapsed by the time the vehicle was repaired. But defendant has presented no reasons why the expiration of the warranty should be measured with reference to the date when repairs were completed rather than the date when the vehicle was first presented for repair; nor has it shown that plaintiff was obliged to provide notice that the warranty was about to lapse. For these reasons, the court will deny City's motion for summary judgment on Count IX.

### E. *Breach of Implied Warranties*

■ In Counts VII and VIII, plaintiff alleges that his vehicle was sold in violation of the implied warranty of merchantability as made actionable by the Magnuson–Moss Act, 15 U.S.C. § 2301, and the Uniform Commercial Code, 810 ILCS 5/2–314. The Magnuson–Moss Act states that an implied warranty of merchantability may be limited by the terms of an express warranty so long as the limitation is prominently displayed on the face of the warranty in clear and unmistakable language and is not unconscionable. 15 U.S.C. § 2308(b). *See also Bush v. American Motors Sales Corp.*, 575 F.Supp. 1581, 1583 (D.Colo.1984). Similarly, the UCC provides that a written warranty may be used to modify the terms of an implied warranty of merchantability so long as the language of the written warranty is conspicuous and specifically mentions merchantability. 810 ILCS 5/2–316(2). Plaintiff's express warranty states that "[a]ll implied warranties, including the implied warranties of merchantability and fitness for a particular purpose, are hereby limited to the same duration of time as the express written limited warranty stated herein." Plaintiff contends that he pre-

sented his vehicle for repair before his warranties expired, but he provides no evidence to show that he notified City about any of the defects in his vehicle other than the overheating problem. A buyer may not bring an action for breach of an express or implied warranty based on defects which become evident after the expiration of those warranties. *See Tokar v. Crestwood Imports, Inc.*, 177 Ill.App.3d 422, 126 Ill.Dec. 697, 532 N.E.2d 382, 387–389 (1st Dist.1988). Because Sampler failed to notify City of the alleged breach of the implied warranty of merchantability prior to its expiration, City is entitled to summary judgment on Counts VII and VIII.

### III. *Conclusion*

Defendant City's motion for summary judgment on the TILA claim will be denied because there is a factual question as to whether City imposed a hidden finance charge on plaintiff and other class members by adding the discount as a separate and identifiable cost item to the purchase price of their vehicles (Count I). Defendant Al Ravin's motion for summary judgment on the RICO claim is granted because plaintiff has not shown that he participated in the alleged conspiracy (Count II). City's motion for summary judgment on the ICFA claim is denied for the reason that the underlying transaction may have violated federal law (Count IV). City's motion for summary judgment on the Magnuson–Moss and UCC claims for breach of an implied warranty of merchantability is granted because plaintiff did not provide notice of the breach prior to the expiration of that warranty (Counts VII and VIII). City's motion for summary judgment on the state law claim for breach of an express limited warranty is denied for the reason that plaintiff presented his vehicle for repair prior to the expiration of the warranty (Count IX).

ORDERED: Defendants' motion for summary judgment is granted with respect to Counts II, VII, and VIII and is denied with respect to Counts I, IV, and IX. All claims against defendant Al Ravin are dismissed.

### MEMORANDUM OPINION AND ORDER

#### July 31, 1998.

The parties have filed cross-motions for reconsideration pursuant to FRCP 54(b) urging the court to modify its memorandum opinion and order denying defendants' motion for summary judgment on Counts I and IV of the Second Amended Complaint. *See Sampler v. City Chevrolet Buick Geo, Inc.*, 1998 WL 292389 (N.D.Ill.1998). Both of these counts turn on the viability of plaintiff's claims under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1638(a)(3). Plaintiff alleges that City imposed a hidden finance charge by increasing the price of his vehicle to cover the cost of a discount charged by a subprime financing company. City argues that the discount was exempt from disclosure because it fell within the "cost of doing business" exception set forth in the Official Staff Commentary to Federal Reserve Board Regulation Z, which explains that a discount is not a finance charge if it is "absorbed" by a creditor but not if it is "separately imposed" on the consumer. 12 C.F.R. § 226.4(b)(6) at § 226.4(a)(2) (Supp.I). The commentary further explains that a creditor may take the cost of a discount "into consideration in determining the … cash price of the property or service sold." *Id.* The dispositive issue in this litigation, then, is whether City "absorbed" the cost of the discount or "separately imposed" it on plaintiff.

There is virtually no case law which purports to define the operational difference between including the cost of a discount within the price of a vehicle and separately imposing it on a purchaser. Extrapolating from what little law there is, the court reasoned that the cost of a discount is separately imposed on a consumer only if it is added as a separate and distinct line item to the negotiated purchase price of a vehicle sold on credit. Thus:

> If a dealer negotiates the price of a vehicle so as to cover the discount and other costs, then the discount is included in the price. If the dealer negotiates the price of the vehicle and then informs the purchaser that he will have to pay an additional charge to cover the discount, then the discount is separately imposed. This rule is

not without logical foundation, for dealers may be able to obtain a higher overall price by adding the cost of the discount as a post hoc tax on the sale instead of including it within the negotiated price.

*Sampler,* 1998 WL 292389, at *5. The court then denied summary judgment on the grounds that the "recap and manager sheets could be read as evidence that City negotiated the price of plaintiff's vehicle and then increased that price by the amount of the discount, thereby representing that the price of plaintiff's vehicle might have been lower but for that cost." *Id.* at *6.

A point of clarification is in order. Plaintiff notes that there is a division of authority within the Northern District of Illinois as to whether a dealer may increase the price of a vehicle sold on credit to recoup the cost of a subprime discount. Some courts have held that a discount is not a finance charge if it is included within the purchase price of a vehicle sold on credit, *see Balderos v. City Chevrolet, Buick and Geo, Inc.,* 1998 WL 155912 (N.D.Ill.1998) (Marovich, J.), *Cleveland v. Wallace Auto Sales, Inc.,* 1998 WL 142357 (N.D.Ill.1998) (Nordberg, J.), and *Walker v. Wallace Auto Sales, Inc.,* 1997 WL 598149 (N.D.Ill.1997) (Williams, J.), while others have reached a contrary result, *see Taylor v. Bob O'Connor Ford, Inc.,* 1998 WL 177689 (N.D.Ill.1998) (Gottschall, J.), *Johnson v. Rohr–Ville Motors, Inc.,* 1996 WL 447261 (N.D.Ill.1996) (Holderman, J.). There is nothing in the court's opinion which should be construed to articulate a third position on the matter. By holding that the cost of a discount is not a finance charge when it is included within the negotiated price of a vehicle, the court implicitly sided with *Balderos, Cleveland,* and *Walker. See Sampler,* 1998 WL 292389, at *5 (declining to follow *Taylor* to the extent that it was inconsistent with "prior caselaw holding that the cost of a discount may be included in the price of a vehicle sold on credit"). *Balderos* and its kin do not command the outcome of the instant case, however, for they did not address the particular question of whether the cost of a discount is separately imposed on a consumer when it is listed as a separate and distinct line item on dealer transaction forms. Even if the Seventh Circuit ultimately decides that the cost of a discount may be included within

the purchase price of a vehicle sold on credit, then, this holding would not necessarily resolve the question of whether the cost of the discount was separately imposed on the plaintiff in this case.

Plaintiff contends that the court erred by holding that a dealer may attempt to recover the aggregate cost of its discounts by raising the price of its vehicles sold on credit. The sole basis for its objection is that the court's holding conflicts with *Gibson v. Bob Watson Chevrolet–Geo, Inc.,* 112 F.3d 283 (7th Cir. 1997). In that case, the Seventh Circuit held that auto buyers had stated a TILA claim by alleging that they were charged more for warranties when they purchased on credit than when they paid in cash. *Id.* at 284–285. Plaintiff generously interprets this case to hold that *any* difference between the price of a car sold on credit and that of a car sold for cash is a finance charge. The problem with this analysis is that *Gibson* involved a warranty rather than a financing discount, so the court of appeals had no occasion to consider whether the mark-up was exempt from disclosure as a cost of doing business. Because the *Gibson* court did not reach the central issue in this case, plaintiff's motion for reconsideration must be denied.

■■ City argues that the court should have granted its motion for summary judgment because the record does not support an inference that it added the subprime discount to the negotiated price of plaintiff's vehicle. The court agrees. In denying the motion for summary judgment, the court was concerned that City might implicitly or explicitly have represented to Sampler during the course of his negotiations that he would have to pay a fixed charge of $410 in connection with the purchase of his vehicle. The court believes that this suggestion of non-negotiability is what distinguishes transactions where the discount is included in the purchase price from those where it is separately imposed on the consumer. Because there is undisputed evidence in this case that City did not disclose the holdback to plaintiff during the course of his negotiations, however, it follows that City could not have represented that the price of the vehicle would have been lower but for the discount. At most, the manager and recap sheets reflect that City included the cost of the discount within the negotiated

price. Because the discount was not separately imposed on the plaintiff, then, it was exempt from statutory disclosure requirements as a cost of doing business.

ORDERED: For the foregoing reasons, plaintiff's motion for reconsideration is denied and defendant's motion for reconsideration is granted. The court's order of May 20, 1998 is amended to reflect that defendant's motion for summary judgment on Counts I and IV of the Second Amended Complaint is granted.