LARRY TURNBOUGH, Plaintiff-Appellant, *v.* JOHN SCHIEN, d/b/a SCHIEN BODY & EQUIPMENT COMPANY, Defendant-Appellee.

(No. 12426; ▮▮▮▮▮▮▮▮)

Fourth District—March 12, 1975.

Goldenhersh & Goldenhersh, of East St. Louis (Richard P. Goldenhersh, of counsel), for appellant.

Stuart Dobbs, of Denby & Dobbs, of Carlinville, for appellee.

Mr. PRESIDING JUSTICE SIMKINS delivered the opinion of the court:

Plaintiff, Larry Turnbough, appeals from a judgment of the trial court in favor of defendant, John Schien, d/b/a Schien Body and Equipment Company, and from a finding that an implied warranty of fitness for a particular purpose did not arise from the installation and sale by defendant to plaintiff of a dump body on plaintiff's truck. The only question before this court is whether that trial court's finding is against the manifest weight of the evidence.

In early 1971, plaintiff contracted with defendant to furnish and install a dump body on a truck to be purchased by plaintiff. A Ford truck was subsequently purchased by plaintiff and delivered to defendant for installation of the body. After the work was completed, various difficulties developed in regard to said body making it impossible to do the dump work intended. Plaintiff had the work redone and brought an action to recover the expenses incurred.

At the bench trial the following testimony was adduced: On February 10, 1971, plaintiff obtained a bid from Broadway Truck Sales, Inc., in St. Louis, Missouri, for a 1971 Ford LT900 Ragoon Red Truck (cab and chasis only) with a wheel base of 204 inches and a cab-to-axle length of 126 inches. Earl Carpenter, a salesman for Broadway, testified that he originally tried to sell plaintiff a 15-foot bed for the body, but plaintiff decided to go elsewhere because the price was too high. He further stated that he told plaintiff that for proper functioning on this particular wheelbase he would need a bed of 15 to 15½ feet, and that a 14-foot bed would be too short. On February 15, 1971, plaintiff entered into a contract with defendant for installation of the body on a truck that plaintiff had not yet purchased. The purchase order was for a 14-foot (in length)

standard PSB 154 Perfection bed and stated that this was for a 120-inch cab-to-axle length chasis. On February 26, 1971, plaintiff purchased the truck that he had received a bid for from Broadway. After receiving possession of the truck, plaintiff delivered said truck to defendant for the body installation on April 21, 1971.

Plaintiff testified that he had a Perfection body on his last truck, and since it had performed so well, he definitely wanted a Perfection body. Plaintiff testified that on February 15, 1971, a salesman of defendant, Dennis Baldridge, came to his home to discuss the buying and installation of a dump body on the truck he was about to purchase. He stated that Baldridge told him that to beat the price increase he should buy now. He further stated that he was given the impression that although the order called for a 14-foot bed, the exact length could be decided later at little extra cost once he had finally purchased the truck. He stated that when he delivered the truck he discussed the body length with Jim Schien and a Mr. Allen for 30 to 45 minutes. He stated that he told them he was going to use the body for construction work. He further stated that he was told by Allen not to worry about putting a 14-foot bed on a 204-inch wheelbase because that would be taken care of. He stated that upon receiving the completed truck from defendant, the dump body would not work properly and had to be redone with a 15-foot frame by another company. On cross-examination he stated that when he delivered the truck to defendant nothing was stated to him about the truck being different than expected. He did state, however, that he thought there was some problem because of all the measuring. He stated that nothing was said to him to the effect that adjustments would have to be made to the bed nor were options given him in this regard. He further stated that he told defendant that if the truck needed a longer bed, he was willing to pay for it.

Wilson Lockwood, an employee of defendant, testified that he measured plaintiff's truck and discovered that it measured 126 inches cab to axle while the order called for only 120 inches. He stated that he told plaintiff about the problem in the presence of Jim Schien and suggested two remedies, shortening the truck or extending a spreader lip. He stated that he discussed with plaintiff in detail the elements involved in each remedy. He further stated that plaintiff decided for them to go ahead and mount the 14-foot bed by extending a spreader lip. On cross-examination he stated that owners of trucks generally have to rely upon them for proper installation procedure. He also stated that he told plaintiff that the truck would dump properly when the spreader lip was added. Jim Schien testified that he had a conversation with plaintiff regarding the 6-inch disparity between that indicated on the purchase order and the

actual length of the truck. He stated that he told plaintiff that he did not recommend putting a 14-foot bed on a 126-inch cab to axle and that it would not work. He stated that plaintiff decided to stay with the 14-foot bed, so he discussed with him the various options available in installing that length bed on this particular truck. He stated that plaintiff chose the 8-inch spreader-lip option. He testified that plaintiff stated to him that he had dump bodies before and that this was what he wanted. He further stated that he had often put 14-foot beds on 126-inch length trucks but had always in the past used 12-inch spreader lips, not 8-inch. He stated that he also tells these individuals that he doesn't recommend it.

The trial court then found in favor of the defendant and stated:

> "As I see it, the only theory we've proceeded on here is an implied warranty, and I think that has been destroyed by the non-recommendation of the defendant. I'm convinced from all the evidence that there was a recommendation by the defendant that he didn't recommend this combination, and I think that the plaintiff had enough information being an experienced truck driver-operator personally of trucks over the years, in the concrete ready-mix business, and he displayed to me considerable knowledge and experience with trucks which I can extend to the point that I believe that he wanted the fourteen-foot bed on the fifteen-foot truck, and that Schien accommodated him, but told him that they didn't think it would work, but that's what he wanted anyway, and that's what he got."

Plaintiff admits that the sole basis for its action is a breach by the seller of an alleged implied warranty of fitness for a particular purpose. Section 2—315 of the Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, par. 2—315) provides as follows:

> "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

The Illinois Code Comment to that section (Ill. Ann. Stat. ch. 26, par. 2—315, Illinois Code Comment (Smith-Hurd 1963) states that reliance by the buyer on the skill or judgment of the seller is an essential element for the establishment of this warranty. Reliance, however, is a question of fact for the trier of fact to decide. *American Spiral Pipe Works v. Universal Oil Products Co.*, 220 Ill.App. 383; Ill. Ann. Stat. ch. 26, par. 2—315, Illinois Code Comment (Smith-Hurd 1963).

Our examination of the record in the instant case reveals that the

trial court's finding of nonreliance by the plaintiff is not against the manifest weight of the evidence. Plaintiff was an experienced truck driver. Plaintiff had been told by Carpenter, the Ford salesman, on February 10, 1971, or 5 days before he signed defendant's purchase order, that he needed a bed of 15 to 15½ feet for proper functioning on the wheelbase of this particular truck, and that a 14-foot bed would be too short. Lockwood, an employee of defendant, testified that he and Jim Schien talked to plaintiff about the length problem and discussed the options available. Furthermore, Jim Schien specifically stated that he did not recommend putting a 14-foot bed on a 126-inch cab to axle and that it would not work. He stated that he then discussed options because plaintiff indicated that that's what he wanted. There is then sufficient evidence in the record to support the trial court's finding of nonreliance.

We also note that the plaintiff testified that he had a Perfection body on his previous truck, and since it had performed so well, he definitely wanted a Perfection body for his new truck. The Illinois U.C.C. Comments to section 2—315 (Ill. Ann. Stat. ch. 26, par. 2—315 (Smith-Hurd 1963)) state: "If the buyer himself is insisting on a particular brand he is not relying on the seller's skill and judgment and so no warranty results."

Accordingly, for the reasons stated above, the judgment of the circuit court of Macoupin County is hereby affirmed.

Judgment affirmed.

TRAPP and CRAVEN, JJ., concur.