(No. 63693.—

PAUL ROTHE, Appellee, v. MALONEY CADILLAC, INC., *et al.* (General Motors Corporation, Appellant).

*Opinion filed January 19, 1988.*

Garrett B. Johnson, Robert J. Kopecky, Michael P. Foradas and Ann M. Marchaterre, of Kirkland & Ellis, of Chicago (Lee Schutzman, of Detroit, Michigan, of counsel), for appellant.

L. Steven Platt and Charles A. Linn, of Arnold & Kadjan, of Chicago, for appellee.

JUSTICE CUNNINGHAM delivered the opinion of the court:

In the circuit court of Cook County, plaintiff, Paul Rothe, filed a six-count complaint to recover economic losses allegedly suffered as a result of his purchase of a

1982 Cadillac DeVille. Two counts (counts I and II) against the vehicle's manufacturer, General Motors Corporation (GM), are based on express warranties. These counts were allowed to stand and are not in issue here. Another count (count VI) names both GM and the dealership from which plaintiff purchased the vehicle, Maloney Cadillac, Inc. (Maloney). Count VI, based on the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1983, ch. 121, par. 261 *et seq.*), was stricken in the circuit court with leave to amend. It also is not in issue here. In the other three counts, plaintiff alleges breaches of implied warranties. Count IV (against both GM and Maloney) is based upon the implied warranties of merchantability and fitness for a particular purpose set forth in sections 2–314 and 2–315 of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1983, ch. 26, pars. 2–314, 2–315). Count III (against GM) and count V (against Maloney) are brought pursuant to section 2310(d)(1) of the Federal Magnuson-Moss Warranty Act (Magnuson-Moss) (15 U.S.C. §2310(d)(1) (1976)), which states in part that a consumer damaged by a supplier's or warrantor's failure to comply with an implied warranty may sue for legal or equitable relief. In counts III and V plaintiff also invokes section 2308(a) of Magnuson-Moss (15 U.S.C. §2308(a) (1976)), which restricts an express warrantor's ability to disclaim implied warranties.

The circuit court dismissed with prejudice counts III, IV and V. It found that, due to lack of privity, no implied warranties for solely economic losses ran from GM to plaintiff. The circuit court apparently further found that such implied warranties running from Maloney to plaintiff had been effectively disclaimed. The appellate court upheld the dismissal of count IV as it relates to Maloney, finding, as apparently did the trial court, that Maloney had effectively disclaimed UCC implied warranties of

merchantability and fitness for a particular purpose pursuant to section 2—316 of the UCC (Ill. Rev. Stat. 1983, ch. 26, par. 2—316). The appellate court reversed the dismissal of count IV as it relates to GM, stating that the lack of privity did not preclude recovery against GM for breach of implied warranties. (The appellate court did not address whether GM's disclaimers met the requirements of section 2—316 of the UCC (Ill. Rev. Stat. 1985, ch. 26, par. 2—316) and were thus, under the UCC, effective.) The appellate court also reversed counts III and V, finding that both defendants gave plaintiff an express warranty and that, therefore, under section 2308(a) of Magnuson-Moss (15 U.S.C. §2308(a) (1976)), each defendant's disclaimer of implied warranties was ineffective. (142 Ill. App. 3d 937.) Pursuant to Supreme Court Rule 315 (107 Ill. 2d R. 315), we granted GM's petition to appeal the appellate court's rulings regarding count IV (as it applies to GM) and count III.

We consider first count IV as it relates to GM. With respect to count IV, plaintiff alleges at one point that he purchased the vehicle from GM. However, the sales contract which he incorporates into his complaint clearly indicates that he actually purchased the vehicle from Maloney, not from GM. Moreover, elsewhere in count IV he alleges that Maloney was "the selling dealer." Since plaintiff has not alleged an agency relationship, we construe his rather ambiguous count IV as alleging that he purchased the vehicle from Maloney not as an agent of GM but as an independent dealership. In count IV plaintiff further alleges that GM had reason to know that he was relying, and that he did rely, on GM's skill and judgment in selecting a vehicle for the "ordinary purpose of driving." He also alleges that the vehicle was defective in certain enumerated respects and that therefore GM breached its implied warranties of fitness for a particu-

lar purpose (Ill. Rev. Stat. 1983, ch. 26, par. 2—315) and merchantability (Ill. Rev. Stat. 1983, ch. 26, par. 2—314).

Our recent decision in *Szajna v. General Motors Corp.* (1986), 115 Ill. 2d 294, dictates that we affirm the dismissal of count IV against GM, since count IV is based solely upon implied warranties of article II of the UCC. In *Szajna* we extensively discussed the UCC's implied warranties. We concluded that, with respect to purely economic loss, the UCC article II implied warranties give a buyer of goods a potential cause of action only against his immediate seller. In reaching this conclusion we particularly noted the UCC section 2—607 notice provisions (Ill. Rev. Stat. 1985, ch. 26, par. 2—607), as well as UCC sections 2—316 and 2—719 (dealing with warranty disclaimers and remedy limitations, respectively), all of which clearly contemplate a buyer-seller relationship. (115 Ill. 2d at 311.) We explained that, as buyer and seller, parties are in vertical privity. We recognized that the UCC did not preclude us from extending the coverage of implied warranties. However, recognizing that the General Assembly was mindful and concerned about the problems facing consumers purchasing automobiles, and further recognizing that the General Assembly was actually addressing such problems, we declined to engage in "judicial legislation" regarding implied warranties applicable to purely economic loss. (115 Ill. 2d at 311-12.) Because there was no buyer-seller relationship between the parties in the *Szajna* decision, we held that the plaintiff could not recover purely economic losses under a UCC article II implied warranty theory. In the instant case there is also no buyer-seller relationship between the plaintiff and GM. Consequently, count IV was, with respect to GM, properly dismissed. We thus reverse the appellate court's ruling that the circuit court erred in dismissing with prejudice count IV against GM.

We next turn to count III, which plaintiff (asserting the same breaches of implied warranties alleged against GM in count IV) brings pursuant to section 2310(d)(1) of Magnuson-Moss (15 U.S.C. §2310(d)(1) (1976)). Since section 2310(d)(1) in part authorizes actions by a "consumer" against a "supplier" for breach of implied warranties, arguably the provision supports count III. Plaintiff most certainly is a "consumer" (broadly defined in section 2301(3) (15 U.S.C. §2301(3) (1976)) to include not only the purchaser of a consumer product but numerous others as well, including certain transferees), and GM is most certainly a "supplier" (defined in section 2301(4) (15 U.S.C. §2301(4) (1976)) as "any person engaged in the business of making a consumer product directly or indirectly available to consumers"). Section 2310(d) indisputably evinces a congressional intent of providing broad warranty protection to consumers. (*Szajna v. General Motors Corp.*, 115 Ill. 2d at 315.) However, a determination of whether plaintiff can state a cause of action against GM under Magnuson-Moss for breach of implied warranties requires an examination of section 2310(d) in conjunction with other Magnuson-Moss provisions, particularly section 2301(7) (15 U.S.C. §2301(7) (1976)), which defines "implied warranty," and provisions referenced in section 2301(7).

An "implied warranty" is defined in section 2301(7) as "an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product." As we acknowledged in *Szajna* (115 Ill. 2d at 314), some authorities indicate that where State law imposes an implied warranty only between a seller and his immediate buyer, section 2301(7) of Magnuson-Moss imposes an implied warranty only between those same parties. In *Szajna*, however, we also noted the language in section 2301(7) which explicitly indicates that State-law

implied warranties are *modified* by several other Magnuson-Moss provisions, including section 2308 (15 U.S.C. §2308 (1976)). Section 2308(a) in part prohibits a "supplier" (defined previously as including parties with whom a consumer does not necessarily deal directly) who makes an express warranty from disclaiming any implied warranty to a consumer.

In *Szajna*, we construed section 2310(d) (15 U.S.C. §2310(d) (1976) (authorizing actions by consumers against suppliers for breach of implied warranties)) in conjunction with the statutory definitions of "consumer," "supplier," and "implied warranty" (15 U.S.C. §§2301(3), 2301(4), 2301(7)), as well as in conjunction with the section 2308(a) restrictions on implied warranty disclaimers (15 U.S.C. §2308(a) (1976)). We evaluated the combined effect of these provisions upon a manufacturer/express warrantor. We found that Magnuson-Moss does more than merely preclude a manufacturer/express warrantor from disclaiming an implied warranty which State law imposes upon him. We concluded that Magnuson-Moss also actually imposes upon the manufacturer/express warrantor the same implied warranties which, under State law, are imposed only against the buyer's immediate seller.

In so construing the provisions of Magnuson-Moss discussed above, we recognized in *Szajna* the privity of contract which exists between a manufacturer and consumer when the manufacturer makes a contractual promise (express warranty) directly to the consumer. We found in *Szajna* that this is not the direct buyer-seller relationship which forms the basis for imposing an implied warranty under article II of the UCC. We stated, however, that the contractual relationship (between the manufacturer/express warrantor and consumer) is sufficient to impose upon the manufacturer/express warran-

tor liability for UCC article II implied warranties *as modified by* Magnuson-Moss.

As we indicated in *Szajna*, Magnuson-Moss broadens the reach of the UCC article II implied warranties, affording consumers substantially greater protection against defective goods. In the instant case we adhere to the conclusion we reached in *Szajna* regarding the implied warranties which Magnuson-Moss can impose upon an express warrantor.

We thus hold that, under Magnuson-Moss, GM's express warranty made directly to plaintiff provides him with a basis to assert GM's breach of implied warranties. Accordingly, we affirm the appellate court's holding that count III should not have been dismissed for lack of privity. However, we vacate the appellate court's holding that count III necessarily "states a cause of action." In moving to dismiss count III, GM asserted numerous other pleading deficiencies unrelated to the issues presented in this appeal, issues which neither the circuit court nor appellate court has yet addressed. On remand the circuit court should address these other alleged deficiencies and determine whether in count III plaintiff has in fact stated a cause of action.

GM urges us to apply the construction of Magnuson-Moss which we articulated in *Szajna* only to causes of action arising after the date of that decision. GM contends that *Szajna* announced a new rule of law and should therefore apply only prospectively. The *Szajna* opinion construed certain provisions of Magnuson-Moss which this court had not previously had occasion to address; the opinion did not, however, overrule precedent or otherwise create a new rule of law. (See *Sunich v. Chicago & North Western Transportation Co.* (1985), 106 Ill. 2d 538.) We thus decline to limit our construction of Magnuson-Moss to causes of action arising after the date of the *Szajna* decision.

For the reasons given, we reverse the appellate court's ruling that the circuit court erred in dismissing with prejudice count IV as it relates to GM. We affirm the appellate court's holding that count III should not have been dismissed for lack of privity, but we vacate the appellate court's holding that count III states a cause of action. With respect to count III, we remand to the circuit court for further proceedings.

*Affirmed in part; reversed in part; vacated in part; and remanded.*