KAREN CONNICK *et al.*, Indiv. and on Behalf of All Others Similarly Situated, Plaintiffs-Appellants, v. SUZUKI MOTOR COMPANY, LTD., *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—94—1275

Opinion filed September 29, 1995, *nunc pro tunc* June 30, 1995.—Rehearing denied August 1, 1995.

706

708

Holstein, Mack & Klein (Robert Holstein and Corey Berman, of counsel) and Baskin, Server, Berke & Weinstein (Burton Weinstein and John Malkinson, of counsel), both of Chicago, for appellants.

Skadden, Arps, Slate, Meagher & Flom (Aimee Anderson, of counsel) and Pappas, Power & Marcus (John Pappas and Debra Marcus, of counsel), both of Chicago, for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiffs brought this class action on behalf of all owners and lessees of the Suzuki Samurai, to recover for alleged breaches of warranty, fraud, violation of consumer protection statutes, misrepresentation, and negligent failure to recall. The circuit court dismissed plaintiffs' amended complaint, second amended complaint, and third amended complaint pursuant to section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615 (now 735 ILCS 5/2—615 (West 1994))).

In order to comply with recently adopted page limitations set forth in Supreme Court Administrative Rule MR No. 10343, which accompanied amended Supreme Court Rule 23 (166 Ill. 2d R. 23), the written disposition in this appeal will be bifurcated into this opinion, to be published, and an unpublished Rule 23 order disposing of the remaining, nonprecedential issues, filed contemporaneously with this opinion.

The following issues are presented for review in this appeal; their

dispositions, whether by this opinion or by Rule 23 order (Rule 23), are designated in parenthesis. We are asked to decide whether: (1) counts V, VI and VII are subject to review in this appeal (Rule 23), (2) New Jersey law is applicable to this case (Rule 23), and (3) the circuit court erred in dismissing plaintiffs' claim for: (a) breach of express warranty (opinion), (b) breach of implied warranty (opinion), (c) violation of the consumer fraud statutes (opinion), and (d) common law fraud (Rule 23). We affirm in part and reverse in part, for reasons that follow.

The third amended complaint (complaint) alleged that plaintiffs, who are citizens of Illinois, Pennsylvania, or New Jersey, purchased Suzuki Samurai vehicles (the Samurai) from authorized Suzuki dealers at a per-vehicle cost in excess of $8,000. The Samurai was alleged to be defective in design or production in that it was prone to roll over under normal driving conditions; its weak body integrity made such rollovers dangerous to the vehicle's occupants; and defendants Suzuki Motor Co., Ltd., and American Suzuki Motor Corporation (collectively Suzuki) sold the Samurais knowing of their propensity to roll over. The complaint did not allege that plaintiffs suffered rollovers; it sought economic damages for the diminished value of their vehicles.

On September 9, 1992, pursuant to section 2—615, the circuit court dismissed all seven counts of plaintiffs' amended complaint, which alleged breach of express and implied warranties, violation of consumer fraud statutes, common law fraud (counts I through IV), misrepresentation and nondisclosure, negligent misrepresentation, and negligent failure to recall (counts V through VII). The court granted plaintiffs 28 days to amend their pleadings.

The second amended complaint, which realleged counts I through IV, was dismissed on July 7, 1993. Once again, the court allowed plaintiffs leave to file an amended complaint. The third amended complaint also realleged counts I through IV and was dismissed with prejudice on March 16, 1994.

Plaintiffs filed a timely notice of appeal, appealing from all three orders discussed above.

I

Plaintiffs contend that the circuit court erred in dismissing their claim for breach of express warranty since Suzuki expressly warranted that all "parts" of the Samurai were free of defects. This warranty assured purchasers, plaintiffs claim, that the steering mechanism and suspension, comprised of "parts," were appropriate for normal driving and that other "parts," the doors, roof system and frame,

would protect occupants in case of a rollover. Authorized Suzuki dealers allegedly made express warranties that the Samurai was safe for highway and off-road use, was a good all-around truck, had a narrower wheelbase that kept it from tipping over, and had certain safety features. Finally, plaintiffs claim that the 1988 Suzuki Samurai owner's manual contained express warranties.

Suzuki responds that this claim is deficient for the following reasons: the written warranty applies solely to automobile parts, does not relate to the issue of rollover or resale value, and is limited to 12 months; the complaint failed to allege that the express warranties became part of the basis of the bargain; the complaint did not satisfy the privity requirement in Illinois; the complaint did not allege that Suzuki was notified of the breach; and the injury plaintiffs claim to have suffered, diminution of the resale value of the vehicles, bears no relationship to the breach of any express warranty and is speculative.

A motion to dismiss pursuant to section 2—615 attacks the sufficiency of a complaint and will be decided solely on the allegations set forth in the complaint. (*People ex rel. Peters v. Murphy-Knight* (1993), 248 Ill. App. 3d 382, 386, 618 N.E.2d 459.)[1] The motion admits all well-pleaded facts, but no conclusional allegations of law or fact. (*Murphy-Knight*, 248 Ill. App. 3d at 386.) On review, the question is whether, when viewed in the light most favorable to plaintiffs, the facts alleged in the complaint adequately state a cause of action. *Murphy-Knight*, 248 Ill. App. 3d at 386.

■ Section 2—313 of the Uniform Commercial Code (UCC) provides:

> "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Ill. Rev. Stat. 1987, ch. 26, par. 2—313(1)(a) (now 810 ILCS 5/2—313(1)(a) (West 1994)); 13 Pa. Cons. Stat. § 2313(a)(1) (1994).

### A

■ Suzuki's first contention is that the 1987 new vehicle war-

---

[1] In the Rule 23 order of this appeal, we concluded that the substantive law of Illinois and Pennsylvania governs this case.

In matters of pleading, however, including whether the pleadings are sufficient or state a cause of action, the law of the forum governs. (*Velle Transcendental Research Association, Inc. v. Esquire, Inc.* (1976), 41 Ill. App. 3d 799, 803, 354 N.E.2d 622.) Therefore, in determining whether plaintiffs' complaint states a cause of action, Illinois law applies.

ranty relates solely to automobile parts, not to the issue of rollover, and is limited in duration.

The Suzuki warranty states:

> "Suzuki warrants all parts of your 1987 SUZUKI vehicle supplied by SUZUKI, except for those items listed under 'WHAT IS NOT COVERED.'
>
> This warranty covers repairs or replacements needed to correct defects in materials or workmanship. Warranty repairs will be made at no charge for parts and/or labor. Any needed parts replacement will be made using new or remanufactured genuine SUZUKI parts."

Although the complaint does not allege a breach of some individual part warranty, the warranty clearly relates to the safe utilization of the "parts" that make up the vehicle. Surely, a consumer cannot be said to have intended only to purchase a pile of defective-free parts; rather, the purchaser invested in a vehicle constructed of those parts which, when used as intended, will not roll over and, if it does, will protect the occupants of the vehicle.

■ With regard to the argument that the "parts" warranty is limited in duration, the limited warranty provides: "This warranty is for 12 months or 12,000 miles, whichever comes first. The warranty begins with the date the vehicle is first delivered at retail or first put into use, whichever is earlier."

The UCC clearly allows for the limitation of warranties as long as it is consistent with the creation of the warranty itself. (Ill. Rev. Stat. 1987, ch. 26, par. 2—316(1) (now 810 ILCS 5/2—316(1) (West 1994)); 13 Pa. Cons. Stat. § 2316(a) (1994); *Tokar v. Crestwood Imports, Inc.* (1988), 177 Ill. App. 3d 422, 430-33, 532 N.E.2d 382.) Here, the warranty claims of plaintiffs Sacco, Kay, and Cooperstein are deficient on their face since they allege discovery of the alleged defect after the expiration of the warranty period. Sacco, Kay, and Cooperstein allege that they purchased their Samurais prior to April 1987. Because all plaintiffs allege that they "came to learn of the Samurai's dangerous propensities" in June 1988, they could not have discovered any alleged defects until after the warranty period had expired. See *Tokar*, 177 Ill. App. 3d at 433.

Accordingly, plaintiffs Sacco, Kay, and Cooperstein, and all other plaintiffs who purchased their vehicles prior to June 1987, may not avail themselves of the promises made in Suzuki's new vehicle limited warranty.

## B

■ Suzuki submits that alleging the express warranties to have

become a part of the basis of the bargain is conclusional and insufficient. Plaintiffs counter that Suzuki's representations are presumed to be a part of the bargain.

Documents, brochures, and advertisements may constitute express warranties. (*Wheeler v. Sunbelt Tool Co.* (1989), 181 Ill. App. 3d 1088, 1100, 537 N.E.2d 1332.) Such affirmations made during the bargain are presumed to be a part of it unless clear, affirmative proof shows otherwise. *Wheeler*, 181 Ill. App. 3d at 1100.

In this case, the allegations state that Suzuki issued an express written warranty with each Samurai sold and that authorized Suzuki dealers made oral representations of vehicle safety prior to the purchase of the vehicles. The complaint alleges that the "express warranties became part of the basis of the bargain between plaintiffs and defendants." Because these affirmations were made during the bargain, they are presumed to be a part of it unless and until Suzuki presents clear, affirmative proof indicating otherwise. *Wheeler*, 181 Ill. App. 3d at 1100.

At this stage of the proceedings, it was error to dismiss the complaint on the ground that the express warranties did not become a part of the basis of the bargain.

## C

Suzuki maintains that the allegations in the express warranty claim fail to satisfy the Illinois requirement of privity.

■ Privity requires that the party suing has "some contractual relationship" with the one sued. (*Crest Container Corp. v. R.H. Bishop Co.* (1982), 111 Ill. App. 3d 1068, 1076, 445 N.E.2d 19.) In *Szajna v. General Motors Corp.* (1986), 115 Ill. 2d 294, 316, 503 N.E.2d 760, the court explained that a manufacturer which extends a written warranty to a consumer establishes privity between it and the consumer, although it is limited in nature. See also *Rothe v. Maloney Cadillac, Inc.* (1988), 119 Ill. 2d 288, 294, 518 N.E.2d 1028 ("[W]e recognized in *Szajna* the privity of contract which exists between a manufacturer and consumer when the manufacturer makes a contractual promise (express warranty) directly to the consumer").

■ Here, plaintiffs assert that Suzuki made numerous representations to them. For instance, the 1988 Suzuki Samurai owner's manual provides:

"Multipurpose vehicles such as your new SUZUKI have higher ground clearance and a narrower track than conventional passenger cars, to make them capable of performing in a wide variety of off road applications. Specific design characteristics give them a higher center of gravity than ordinary cars. An advantage of the

higher ground clearance is a better view of the road allowing you to anticipate problems."[2]

The 1987 Suzuki Samurai new vehicle limited warranty states:

"Suzuki warrants all parts of your 1987 SUZUKI vehicle ***. This warranty covers repairs or replacements needed to correct defects in materials or workmanship. Warranty repairs will be made at no charge for parts and/or labor."

Finally, on June 6, 1988, the Wall Street Journal quoted the vice-president and general manager of American Suzuki Motor Corp.'s automotive division as saying, "We do not have a rollover problem."

Without regard to whether there was any breach, these statements by Suzuki are sufficient promises to establish some contractual relationship with plaintiffs. (See *Wheeler*, 181 Ill. App. 3d at 1100 (stating that documents, brochures, and advertisements may constitute express warranties).) In light of *Szajna* and *Rothe*, these promises or express warranties create privity of contract between Suzuki and plaintiffs.

## D

Plaintiffs maintain that the filing of a complaint satisfies the UCC notice requirement and that Suzuki was otherwise aware of the defects in the Samurai. Suzuki contends that it was not adequately notified of the breach, as required under the UCC.

Section 2—607(3)(a) of the UCC provides that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." (Ill. Rev. Stat. 1987, ch. 26, par. 2—607(3)(a) (now 810 ILCS 5/2—607(3)(a) (West 1994)); 13 Pa. Cons. Stat. § 2607(c)(1) (1994).) "The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched." (Ill. Ann. Stat., ch. 26, par. 2—607, Uniform Commercial Code Comment 4, at 454 (Smith-Hurd 1963) (now 810 ILCS Ann. 5/2—607, Uniform Commercial Code Comment 4, at 371 (Smith-Hurd 1993)); 13 Pa. Cons. Stat. Ann. § 2607, Comment 4 (1984).) If the seller's employees are aware of a defect in the product, the seller is deemed to have been notified. (*Malawy v. Richards Manufacturing Co.* (1986), 150 Ill. App. 3d 549, 501 N.E.2d 376.) The commencement of a lawsuit does not satisfy the notice requirement where the consumer does not sue

---

[2]The owner's manual continues that sharp turns or abrupt maneuvers may lead to loss of control or vehicle rollover. Although this additional language is certainly pertinent to whether Suzuki breached its warranty, it is irrelevant to the question of whether it made a contractual promise (express warranty) to the consumer, which is at issue here.

for personal injuries. *Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 462-63, 546 N.E.2d 580. But see *Bednarski v. Hideout Homes & Realty, Inc.* (M.D. Pa. 1988), 709 F. Supp. 90, 94 (holding that the filing of a civil complaint satisfies the notice requirement under Pennsylvania law).

■ In the instant case, the complaint alleges the Suzuki executives were aware that the Samurai vehicles were not safe; the attorneys general of seven States launched investigations into the advertising of the Suzuki Samurai; Suzuki announced it was considering remedial steps to protect American consumers; and Suzuki was already involved in other litigation stemming from the Samurai rollover problem. Furthermore, this class action complaint was originally filed on June 12, 1990. These allegations establish that Suzuki knew the transactions were "troublesome and must be watched." Ill. Ann. Stat. ch. 26, par. 2—607, Uniform Commercial Code Comment 4, at 454 (Smith-Hurd 1963) (now 810 ILCS Ann. 5/2—607, Uniform Commercial Code Comment 4, at 371 (Smith-Hurd 1993)); 13 Pa. Cons. Stat. Ann. § 2607, Comment 4 (1984).

We conclude that the UCC's notice requirement was satisfied by Suzuki's independent knowledge of the defects in the vehicle and by the filing of the complaint.

### E

Suzuki, relying on *Yost v. General Motors Corp.* (D.N.J. 1986), 651 F. Supp. 656, submits that the injury plaintiffs claim to have suffered, diminution of the resale value of the vehicles, bears no relationship to the breach of any express warranty and that their claim for damages is speculative. Plaintiffs respond that *Yost* is distinguishable because it involves the loss of resale value based on the car's poor reputation, whereas in this case there is an actual defect.

In *Yost*, the plaintiff sued the defendant for breach of warranty, claiming that a defective car engine diminished the value of his car. The court held:

> "The basic problem in this case is that plaintiff Yost has not alleged that he has suffered any damages. He has not stated that the engine in his vehicle is defective in any way. All he is able to allege is that the potential leak is 'likely' to cause damage and 'may' create potential safety hazards." *Yost*, 651 F. Supp. at 657.

■ In the instant case, plaintiffs have alleged that the "Samurai is defective in design or production in that it suddenly and unintentionally rolls over when the driver operates the vehicle at normal operating speeds and normal driving conditions" and that this defect has rendered them "damaged in the amount of the diminution of the

resale value of the vehicles." These allegations sufficiently allege damages.

For the foregoing reasons, the circuit court erred in dismissing plaintiffs' claim for breach of express warranty.

## II

Plaintiffs next argue that the circuit court erroneously dismissed their claims for breach of the implied warranty of merchantability and fitness for a particular purpose. Their complaint alleged that Suzuki warranted to plaintiffs that the Samurai vehicles were fit for both the ordinary purposes for which they are used and their intended use.

Suzuki contends that this claim was properly dismissed for the following reasons: plaintiffs lacked privity with Suzuki, the complaint failed to allege appropriate notice to Suzuki, the implied warranty was expressly limited in duration, the complaint improperly alleged breach of the implied warranty of fitness for a particular purpose, and the alleged breach has no relation to plaintiffs' claimed injury.

## A

Suzuki first claims that the allegations in the complaint fail to satisfy the Illinois requirement of privity. Plaintiffs argue that there is no privity requirement in Pennsylvania; the alleged facts demonstrate privity through the authorized Suzuki dealers, who were agents of Suzuki; privity is established pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (1988); and this court should follow the trend in other jurisdictions and abolish the privity requirement.[3]

Section 2—318 of the UCC extends the warranty of the seller only to those individuals who are *injured in person* by a breach of the warranty. (Ill. Rev. Stat. 1987, ch. 26, par. 2—318 (now 810 ILCS 5/2—318 (West 1994)); 13 Pa. Cons. Stat. § 2318 (1994); *Szajna,* 115 Ill. 2d at 308.)[4] Recovery for economic loss, if at all, must be obtained

---

[3]Although we concluded under part I (C) of this opinion that the parties were in privity for purposes of the express warranties given by Suzuki, the same conclusion does not necessarily follow for plaintiffs' breach of implied warranty claim. Whereas a manufacturer's express warranty creates a contractual relationship with the consumer, an implied warranty "describe[s] obligations imposed by law as a matter of public policy totally unrelated to any contractual relationship." *Szajna,* 115 Ill. 2d at 304.

[4]The UCC sections relating to privity are nearly identical in Illinois and Pennsylvania. Pennsylvania section 2318 provides:

within the framework of contract law rather than tort law and therefore requires privity of contract between the buyer and the seller. *Szajna*, 115 Ill. 2d at 303-09; *A, C & S,* 131 Ill. 2d at 461-62.

■ The authority of an agent emanates from the principal and may be actual or apparent. (*Pearson v. Partee* (1991), 218 Ill. App. 3d 178, 183, 578 N.E.2d 81.) Apparent authority is that authority which the principal knowingly permits the agent to assume or which the principal holds the agent out as possessing. (*Pearson*, 218 Ill. App. 3d at 183.) A plaintiff pleads a cause of action for agency when he or she alleges facts which show that one has acted for another under circumstances which imply knowledge of such acts on the part of the alleged principal. (*Pearson*, 218 Ill. App. 3d at 183-84.) The allegation simply of an agency relationship is not a well-pleaded fact to be taken as true since, merely stated, such relationship is not a fact but a legal conclusion. (*Goodnight v. Piraino* (1990), 197 Ill. App. 3d 319, 326, 554 N.E.2d 1.) In *Washington v. Courtesy Motor Sales, Inc.* (1964), 48 Ill. App. 2d 380, 383-84, 199 N.E.2d 263, the court observed:

> "[T]he term 'Authorized Ford Dealer' is in the nature of a trademark sign, which is used by independent dealers [citation] and means nothing more than a dealer who sells products which have a trade name carrying substantial good will. As stated in Westerdale v. Kaiser-Frazer Corp., 6 N.J. 571, 80 A.2d 91, 94 (1951):
>
>> 'Nor does the fact that when a sale is made by a dealer to the ultimate purchaser a manufacturer's warranty goes with the *** dealer as the agent of the manufacturer. It is merely incidental to the sale and in no wise by itself gives apparent authority or agency to the dealer.' "

■ In this case, the allegation states: "Plaintiffs purchased their vehicles from authorized Suzuki dealers, who were agents of [Suzuki] specifically authorized or apparently authorized by [Suzuki] to deliver [Suzuki's] express warranties to plaintiffs ***." This legal conclusion is devoid of any well-pleaded facts. The fact that the sale is made by

---

"The warranty of a seller whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section." (13 Pa. Cons. Stat. § 2318 (1994).)

Nonetheless, the Illinois and Pennsylvania courts have construed these provisions differently, as will be discussed later.

an "Authorized Suzuki Dealer" does not give rise to apparent authority or agency to the dealer. *Washington*, 48 Ill. App. 2d at 383-84.

The Magnuson-Moss Warranty Act (Magnuson-Moss) states in part that a consumer damaged by a supplier's or warrantor's failure to comply with a warranty may sue for legal or equitable relief. (15 U.S.C. § 2310(d)(1) (1988).) In *Rothe v. Maloney Cadillac, Inc.* (1988), 119 Ill. 2d 288, 518 N.E.2d 1028, the court held that in an action under the Magnuson-Moss provisions, a consumer may sue a remote manufacturer which makes an express warranty under an implied warranty theory. In that situation, there is privity of contract between the consumer and the manufacturer because Magnuson-Moss operates to modify the UCC implied warranties. (*Rothe*, 119 Ill. 2d at 293-95.) That court also held, however, that a separate claim based solely on the UCC implied warranties was properly dismissed because the consumer lacked privity with the manufacturer. *Rothe*, 119 Ill. 2d at 292.

Here, count II is based solely on the implied warranty provision of the UCC. No violation of Magnuson-Moss is alleged. Therefore, plaintiffs have not availed themselves of the Magnuson-Moss modification of the UCC warranties, and they lack privity with Suzuki for an implied warranty.

Plaintiffs' invitation for this court to abolish the privity requirement in all warranty cases must be declined. In *Szajna*, 115 Ill. 2d at 301-11, our supreme court discussed the reasons underlying the privity requirement, which it refused to abolish. We are in no position to overrule our supreme court, and similarly refuse to abolish the privity requirement.

For the foregoing reasons, the circuit court's dismissal of the Illinois plaintiffs' claims for breach of implied warranty of merchantability and fitness for a particular purpose must be affirmed for want of privity.

Plaintiffs are correct in stating that Pennsylvania abolished the privity requirement in breach of warranty cases. In *Kassab v. Central Soya* (1968), 432 Pa. 217, 246 A.2d 848, *overruled on other grounds AM/PM Franchise Association v. Atlantic Richfield Co.* (1990), 526 Pa. 110, 584 A.2d 915, the supreme court of Pennsylvania eliminated the privity requirement in assumpsit suits by purchasers against remote manufacturers for breach of implied warranty. (See also *Israel Phoenix Assurance Co. v. SMS Sutton, Inc.* (W.D. Pa. 1992), 787 F. Supp. 102, 103-04.) Therefore, it was error for the circuit court to dismiss count II of the complaint of the Pennsylvania plaintiffs on the ground that they lacked privity with Suzuki.

## B

■ Suzuki next asserts that the complaint of the Pennsylvania plaintiffs does not allege reasonable notice of any alleged breach.

For the reasons stated in section I(D) of this opinion, Suzuki was adequately notified of the alleged breach of implied warranties.

## C

Suzuki next contends that any implied warranties of the Pennsylvania plaintiffs have been expressly limited in duration.

■ Section 2—316(2) of the UCC states: "[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." (Ill. Rev. Stat. 1987, ch. 26, par. 2—316(2) (now 810 ILCS 5/2—316(2) (West 1994)); 13 Pa. Cons. Stat. § 2316(b) (1994).) A seller may limit the time within which a claim could be asserted by limiting the duration of its warranties. *Tokar*, 177 Ill. App. 3d at 433.

Here, the limited warranty states: "ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE SHALL BE LIMITED TO THE DURATION OF THIS WRITTEN WARRANTY." Because this modification of the warranty meets all of the requirements in section 2—316(2), it is valid. For the reasons stated in part I (A) of this opinion, the Pennsylvania plaintiffs Sacco, Kay, and Cooperstein and all other plaintiffs similarly situated are barred from claiming breach of implied warranty of merchantability or fitness.

## D

Suzuki argues that the complaint fails to properly allege breach of the implied warranty of fitness for a particular purpose. The Pennsylvania plaintiffs reply that their allegations establish that Suzuki knew of their intent to drive the Samurais on roads and highways.

■ An implied warranty of fitness for a particular purpose arises when "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." (Ill. Rev. Stat. 1987, ch. 26, par. 2—315 (now 810 ILCS 5/2—315 (West 1994)); 13 Pa. Cons. Stat. § 2315 (1994).) "A 'particular purpose' *** envisages a specific use by the buyer which is peculiar to the nature of his business ***. For example, *** a seller may know that a particular pair [of shoes] was selected to be used for

climbing mountains." Ill. Ann. Stat., ch. 26, par. 2—315, Uniform Commercial Code Comment 2, at 240 (Smith-Hurd 1963) (now 810 ILCS Ann. 5/2—315, Uniform Commercial Code Comment 2, at 207 (Smith-Hurd 1993)); 13 Pa. Cons. Stat. Ann. § 2315, Uniform Commercial Code Comment 2 (1984).

In this case, the allegations state that Suzuki "knew that plaintiffs and members of the Class intended to use their Samurais both on roads and highways and in off-road circumstances," and that Suzuki implicitly warranted to plaintiffs that the Samurais were fit for their intended use. The allegation that Suzuki knew that the Samurai was to be used in "off-road circumstances" is analogous to the example provided in comment 2 and is sufficient to meet the first part of section 2—315. The complaint, however, is devoid of any allegation that plaintiffs relied on Suzuki's skill or judgment to select a suitable vehicle for its intended use and therefore lacks an indispensable element of this warranty. See *Turnbough v. Schien* (1975), 26 Ill. App. 3d 88, 91, 325 N.E.2d 5.

We conclude that the complaint of the Pennsylvania plaintiffs fails to allege a breach of the implied warranty of fitness for a particular purpose.

### E

██ Suzuki next submits that the alleged breaches of implied warranty bear no relation to plaintiffs' claimed injury. Specifically, Suzuki claims that none of the implied warranties guarantee that the resale value of the vehicles will not diminish. The Pennsylvania plaintiffs counter that they need not suffer a rollover to bring a cause of action based on breach of implied warranty, and they insist that incurring an economic loss is sufficient.

The implied warranty of merchantability "does not impose a general requirement that goods precisely fulfill the expectations of the buyer." (*Skelton v. General Motors Corp.* (N.D. Ill. 1980), 500 F. Supp. 1181, 1191, *rev'd on other grounds* (7th Cir. 1981), 660 F.2d 311.) Instead, section 2—314(2)(c) provides for a minimum level of quality—that the goods "are fit for the ordinary purposes for which such goods are used." (Ill. Rev. Stat. 1987, ch. 26, par. 2—314(2)(c) (now 810 ILCS 5/2—314(2)(c) (West 1994)); 13 Pa. Cons. Stat. § 2314(b)(3) (1994); *Skelton*, 500 F. Supp. at 1191.) With regard to automobiles, "[f]itness for the ordinary purpose of driving implies that the vehicle should be in a safe condition and substantially free of defects. It should be obvious that any car without an adequate transmission and proper brakes is not fit for the ordinary purpose of driving." *Overland Bond & Investment Corp. v. Howard* (1972), 9 Ill. App. 3d

348, 354, 292 N.E.2d 168. See also *Carlson v. General Motors Corp.* (4th Cir. 1989), 883 F.2d 287, 297 (" 'where a car can provide safe, reliable transportation, it is generally considered merchantable' "), quoting *Taterka v. Ford Motor Co.* (1978), 86 Wis. 2d 140, 146, 271 N.W.2d 653, 655.

In *Carlson v. General Motors Corp.*, plaintiffs charged that defendant's engines were inherently defective and subject to frequent breakdowns, necessitating extensive and expensive repairs. Plaintiffs claimed that defendant's failure to correct these defects constituted a breach of the implied warranty of merchantability on the engines. The court rejected the claim for damages based solely on the "diminished resale value" of the automobiles. (*Carlson*, 883 F.2d at 297-98.) The court, recognizing that a vehicle is merchantable if it provides safe, reliable transportation, stated " 'merchantability' clearly does not encompass consumer expectations that a product will hold its value." *Carlson*, 883 F.2d at 297-98.

*Carlson* is distinguishable from the instant facts. There, the court recognized that the "diesel-equipped cars" served the traditionally recognized purpose for which they are used. (*Carlson*, 883 F.2d at 297.) Here, the gist of the complaint is that the defective Samurai is not safe and reliable because it is prone to rollover. Therefore, it is not fit for the ordinary purpose for which automobiles are used, which is to provide safe and reliable transportation.

If the Pennsylvania plaintiffs are able to prove that there has been a breach of the implied warranty of merchantability, then they should be permitted to show that the breach of the warranty was the proximate cause of their alleged losses, as required by section 2—314. Ill. Ann. Stat., ch. 26, par. 2—314, Uniform Commercial Code Comment 13, at 234 (Smith-Hurd 1963) (now 810 ILCS Ann. 5/2—314, Uniform Commercial Code Comment 13, at 188 (Smith-Hurd 1993)); 13 Pa. Cons. Stat. Ann. § 2314, Comment 13 (1984).

In summary, we conclude that the circuit court erred in dismissing the breach of implied warranty of merchantability claim of the Pennsylvania plaintiffs, except those discussed in part II (C) of this opinion.

## III

Plaintiffs' next contention is that the circuit court erred in dismissing their claims under the Illinois and Pennsylvania consumer fraud acts. Plaintiffs claim that Suzuki induced them to purchase Samurais through materially false advertisements and by deliberate, false and misleading statements by the Suzuki dealers.

Suzuki makes the following arguments in response: the com-

plaint failed to allege that plaintiffs relied on any false advertisement in making their purchase; some alleged fraudulent statements were merely subjective opinions which are not actionable; the exhibits attached to the complaint negate the allegations; it is improbable that plaintiffs actually read the written misrepresentations; the alleged defects in the Samurai were known to plaintiffs prior to their purchase; and there is no allegation that plaintiffs purchased their vehicles primarily for personal, family, or household purposes, as required by the Pennsylvania fraud act.

■ The Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1987, ch. 121¹/₂, par. 262 (now 815 ILCS 505/2 (West 1994))) (Illinois Consumer Fraud Act) states:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment, suppression or omission of such material fact *** are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby."

The Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 Pa. Cons. Stat. § 201—1 *et seq.* (1994)) (Pennsylvania Consumer Protection Law), although articulated in different form, evinces a similar policy of outlawing deceptive acts or practices in the conduct of trade or commerce.

## A

Suzuki's first argument is that the complaint does not establish that plaintiffs were induced by the false advertisements to make their purchases.

■ In order to establish a violation of the Illinois Consumer Fraud Act, a plaintiff must show: (1) a deceptive act or practice; (2) an intent by defendants that plaintiff rely on the deception; and (3) the deception must have occurred in the course of conduct involving a trade or commerce. (*Wheeler v. Sunbelt Tool Co.* (1989), 181 Ill. App. 3d 1088, 1109, 537 N.E.2d 1332.) In order to recover individual damages, plaintiff must show his or her injury proximately resulted from the violation. (*Wheeler*, 181 Ill. App. 3d at 1109.) The Illinois Consumer Fraud Act is intended to provide broader consumer protection than the common law action for fraud; therefore, actual reliance need not be shown. *Harkala v. Wildwood Realty, Inc.* (1990), 200 Ill. App. 3d 447, 453, 558 N.E.2d 195.

■ In this case, the complaint alleged that the misstatements of

fact in the advertisements were made by Suzuki to induce plaintiffs to purchase the vehicles. Although there are no facts supporting this allegation, plaintiffs need not show that the misstatements induced them to purchase the vehicles. With regard to any plaintiffs who are shown by the evidence to have purchased their Samurais before the advertisements were run, such claims must be dismissed because of their failure to show proximate cause.

## B

Suzuki next states that many of the advertisements contain only nonactionable "puffery."

Mere subjective descriptions or opinions do not qualify as fraudulent misrepresentations of fact. See *Spiegel v. Sharp Electronics Corp.* (1984), 125 Ill. App. 3d 897, 902, 466 N.E.2d 1040; *Zimmerman v. Northfield Real Estate, Inc.* (1986), 156 Ill. App. 3d 154, 163, 510 N.E.2d 409 (subjective terms like "magnificent" and "comfortable" are not actionable).

The complaint alleges that the following advertisements constitute material misstatements of fact: "Whether you're on the job, or on the town, the Samurai never lets you down. \*\*\* Nothing else comes close to giving you a better run for your money"; Samurai is a "funmobile," with "fun written all over it," and "a million laughs"; "It won't spoil the fun knowing that the Samurai handles differently than any ordinary passenger car"; and the Suzuki 4x4 "has a nifty, go-getter engine, \*\*\* and all the goodies of 4-wheel drive." We agree that these statements are merely subjective descriptions and do not qualify as fraudulent misrepresentations of fact.

## C

Suzuki next asserts that one of the exhibits negates the very allegations of the complaint.

"Where a discrepancy exists between allegations in the complaint and attached exhibits, the exhibits are controlling." (*In re Estate of Casey* (1991), 222 Ill. App. 3d 12, 19, 583 N.E.2d 83.) Here, the complaint alleges that Suzuki misrepresented, in a letter to the National Highway Transportation Safety Administration (NHTSA), that its vehicles "are free from any defects" and "do not present an unreasonable risk of rollover." Suzuki states that this letter, which is attached to the complaint as exhibit F, contains crash data from a University of Michigan study that supports its representations. Whether the crash data from the Michigan study refute the allegation is inconclusive and cannot be decided on a section 2—615 motion, where all well-pleaded facts are admitted.

In a similar vein, Suzuki claims that it is virtually impossible to believe that plaintiffs relied on all of the attached exhibits when purchasing their vehicle. For example, it is unlikely, they argue, that plaintiffs saw Suzuki's letter to NHTSA or that they read both the *Wall Street Journal* and the *Los Angeles Times*.

The allegations stated that Suzuki made these material misstatements of fact to induce plaintiffs to purchase Samurais. Suzuki cannot challenge these allegations in a section 2—615 motion by stating that it is improbable that such acts occurred, but must await an evidentiary presentation. Further, as previously stated, reliance need not be demonstrated by plaintiffs.

Suzuki's contentions in this regard are without merit.

## D

Finally, Suzuki claims that the complaint does not state a claim under the Pennsylvania Consumer Protection Law because there is no allegation that the Pennsylvania plaintiffs purchased the Samurais for personal use.

The Pennsylvania Consumer Protection Law restricts private actions to persons who purchased or leased goods "primarily for personal, family or household purposes." 73 Pa. Cons. Stat. § 201—9.2(a) (1994); *Zerpol Corp. v. DMP Corp.* (E.D. Pa. 1983), 561 F. Supp. 404, 415.

In this case, the complaint lacked any allegation that the Pennsylvania plaintiffs purchased their vehicles primarily for personal, family, or household purposes. Therefore, the Pennsylvania plaintiffs failed to state a cause of action under the Pennsylvania Consumer Protection Law.

The circuit court did not err in dismissing the Pennsylvania plaintiffs' cause of action under the Pennsylvania Consumer Protection Law, but did err in dismissing the claim of the Illinois plaintiffs under the Illinois Consumer Fraud Act, except as to those representations discussed in sections III (A) and (B) of this opinion.

Affirmed in part; reversed in part and remanded.

SCARIANO, P.J., and McCORMICK,[5] J., concur.

---

[5]Justice McCormick participated in the decision of this appeal prior to his retirement from the Illinois Appellate Court, First District.